Julie Marie WALKER, Respondent,

v.

Melvin Eugene WALKER, Movant–Appellant.

No. 20719.

Missouri Court of Appeals, Southern District, Division One.

Dec. 31, 1996.

Andrew Wood, Sims, Johnson, Wood & Higdon, Neosho, for movant-appellant.

M. Roger Carlin, Evenson, Carlin & Le-Page, Pineville, for respondent.

GARRISON, Judge.

This is an appeal by Melvin Walker (Husband) from a judgment which denied his motion to modify child support, but granted the "Counter Petition" of his ex-wife, Julie Walker (Wife), and increased those payments. We reverse in part, and affirm in part.

Husband was ordered to pay $150 per month as child support for his two and one-half year old daughter when his marriage to Wife was dissolved in May, 1986. Husband and Wife later cohabited, and she gave birth to a son in November, 1987. In October, 1990, the Division of Child Support Enforcement of the Department of Social Services issued an order of paternity declaring Husband to be the boy's father, and ordered him to pay $240 per month as support for that child.

On May 19, 1995, Husband filed a motion to modify in which he sought, among other

things not in issue here, an order decreasing the existing child support.[1] Wife then filed her "Counter Petition" in which she sought increased child support. In the order from which this appeal is taken, the trial court imputed income of $2,315 per month to Husband, granted Wife's request for relief, and increased the child support from the existing total amount of $390 per month to $424 per month.

■ Review of the trial court's order is governed by Rule 73.01[2] as interpreted in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Accordingly, we are to affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.; Morrison v. Meadors*, 892 S.W.2d 786, 788 (Mo.App.S.D.1995).

Husband began working at La–Z–Boy in 1986 and was employed there in 1990, earning approximately $22,000 per year, when he was ordered to pay $240 per month for the support of his son. He continued working at La–Z–Boy until he was terminated in November, 1994. His 1994 income tax return indicated earnings from La–Z–Boy of $27,782. There was, however, no evidence about the nature of the work he performed at any time during his employment there.

Husband testified that the reason for his termination at La–Z–Boy was a "dispute regarding an injury there with [his] boss," and that he did not voluntarily quit. The record is devoid of any further information about the injury or the facts surrounding the termination. When asked on cross-examination, Husband denied that his firing occurred when he refused to take a urine test.

The record is also devoid of information about what employment, if any, Husband held, or what efforts he made to obtain employment, between November, 1994, when he lost his job at La–Z–Boy, and approximately May, 1995 when he started working at Sunbeam Outdoor Products in Neosho, Missouri. He was working forty hours per week there,

earning $5.50 per hour, when he filed his motion to modify on May 19, 1995. The evidence also failed to indicate what type of work Husband performed at Sunbeam.

On August 1, 1995, Sunbeam laid off Husband. Again, there was no evidence about the reason for this loss of employment, but Husband testified that he was hoping to be called back to that job soon. At the time of trial his only income was $175 per week from unemployment compensation.

Husband testified that he had applied for other jobs, and had watched the newspaper for job opportunities since his layoff from Sunbeam. On cross-examination, he admitted that he could "weld a little," and had worked as a machinist prior to working at La–Z–Boy. Although he admitted that the newspaper advertised openings for machinists starting as high as $12 per hour, he testified that most of those positions required five years of recent experience which he did not have. He also admitted that the newspaper advertised job openings at $6.25 to $7 per hour for factory jobs.

Wife was the co-owner of a restaurant, and had reported earnings of $6,882 on her 1994 income tax return. She testified that her son had asthma which required twice-daily breathing treatments, and that he had been hospitalized for three weeks with pneumonia. There was no evidence, however, about the cost of his medical care. Wife did present evidence of increased expenses associated with the daughter's dance and musical lessons.

Husband presented two Form 14's to the trial court and Wife presented one. Each of Husband's Form 14's attributed income of $866 (which he testified was $5 per hour) to both him and Wife; and $141 per month was listed for each of them on line 2(c) for support of other children (Husband had remarried and had another child, and Wife had another child by the man she was then living with). One of the forms attributed $100 per month to health care costs on line 4(c) while

---

1. The trial court consolidated the child support orders for purposes of the modification proceeding.

2. All references to rules are to Missouri Rules of Civil Procedure (1995), and all references to statutes are to RSMo 1994.

the other attributed nothing for that expense. One of the forms indicated a presumed child support amount of $156.50 while the other indicated $206.50. Husband requested that the trial court modify the child support award to something between those two figures.

The Form 14 presented by Wife, however, attributed income of $566 per month to her and $2,315 to Husband based on his 1994 La-Z–Boy income; deducted $50 from her income and $425 from Husband's on line 2(c) for support responsibility for other children; and arrived at a presumed amount of child support owing by Husband of $499.

The trial court adopted Wife's Form 14, except it credited Husband with a $75 per month health insurance expense which it ordered him to provide, and it awarded child support of $424 per month for the two children. Excluding the expense for the health insurance, this constituted an increase of $34 per month over the total of the two prior child support orders.

On this appeal, Husband alleges error concerning the trial court's order as it relates to both the trial court's action in sustaining Wife's motion to modify and in denying his motion. He complains that the trial court improperly sustained Wife's motion by imputing income to him based upon his previous earnings at La–Z–Boy. He also argues that the court should have sustained his motion to modify and decreased his child support payments because his income was lower than when the original support orders were entered.

■ An award of child support is modifiable only if the movant shows changed circumstances so substantial and continuing as to make the terms of the original decree unreasonable. § 452.370; *In re Marriage of Stanley*, 793 S.W.2d 487, 488 (Mo.App.E.D. 1990). The burden of proof is on the party seeking a modification of a decree. *Sifers v. Sifers*, 544 S.W.2d 269, 270 (Mo.App.W.D. 1976). Wife, therefore, had the burden of proof relating to her request that the child support payments be increased, and Husband had the burden concerning his motion seeking a decrease in those payments.

■ "Past, present, and anticipated earning capacity may be properly considered in determining the ability of a ... noncustodial parent to pay child support." *Dimmitt v. Dimmitt*, 849 S.W.2d 218, 220 (Mo.App.S.D. 1993) (quoting *Goodwin v. Goodwin*, 746 S.W.2d 124, 126 (Mo.App.S.D.1988)).

The "Directions for Completion of Form 14" state, in part:

> If either parent is unemployed or underemployed, child support may be calculated in appropriate circumstances based on a determination of potential income. To determine potential income, the court or administrative agency may consider employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, prevailing job opportunities in the community, and whether that parent is custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

■ These directions are consistent with case law holding that courts may impute a higher income to a noncustodial parent than he or she actually earns, if the evidence shows that the parent has the capacity to earn more but voluntarily refuses to do so. *Schulze v. Haile*, 840 S.W.2d 263, 264 (Mo. App.W.D.1992). *See also Luker v. Luker*, 861 S.W.2d 195, 199 (Mo.App.W.D.1993). The concept of imputation of income has been described as a method of preventing a spouse from escaping his or her responsibilities by "deliberately" limiting his or her work to reduce income. *Jensen v. Jensen*, 877 S.W.2d 131, 136 (Mo.App.E.D.1994). "In order to avoid such a situation, a court may, *in proper circumstances*, impute income to a spouse according to what that spouse could earn by use of his or her best efforts to gain employment suitable to that spouse's capabilities." *Id. See also Wagner v. Wagner*, 898 S.W.2d 649, 650 (Mo.App.E.D.1995).

"Proper circumstances" have been considered to include situations where a parent has voluntarily reduced his or her income without justification. *Devries v. Devries*, 804 S.W.2d 825, 827 (Mo.App.W.D.1991). Also included

are situations where a parent involuntarily lost a job but (1) failed to use his or her best efforts to obtain a new job, *In re Marriage of Garrison*, 846 S.W.2d 771, 776 (Mo.App.S.D. 1993); (2) refused to accept employment offers, *Luker v. Luker*, 861 S.W.2d at 199; or (3) failed to show that the unemployment was other than temporary, *Foster v. Foster*, 844 S.W.2d 559, 562 (Mo.App.E.D.1992).

█ In the instant case, there was no evidence that Husband voluntarily quit his job at La–Z–Boy, or that he was guilty of actions which could be interpreted as unreasonably creating the circumstances leading to his termination. Of course, the trial court, as the trier of fact, could believe all or part of a witness' testimony and reject the rest, and could also disbelieve testimony even if uncontradicted. *Vance v. Vance*, 852 S.W.2d 191, 193 (Mo.App.S.D.1993). Even if the trial court had disbelieved Husband's testimony that his termination at La–Z–Boy was involuntary, and concluded that it was in fact voluntary (a matter which we do not decide),[3] there was no evidence that would support a finding that it was without justification.

█ It is true that Husband at one time earned the amounts which the trial court utilized in imputing income to him. Proof that a parent has previously made more money, however, is not alone a sufficient basis upon which to impute income at those levels. *See Cowen v. Cowen*, 869 S.W.2d 774, 776–77 (Mo.App.S.D.1994); *In re Marriage of Lowe*, 860 S.W.2d 813, 818 (Mo.App.S.D.1993). It has been said that a court "may impute an income to a spouse according to what he could earn by use of his best efforts to gain employment suitable to his capabilities." *Wagner v. Wagner*, 898 S.W.2d at 650. A parent must have the capacity to earn income which is imputed to him or her. *Keck v. Keck*, 820 S.W.2d 727, 729 (Mo.App.W.D. 1991); *Forhan v. Forhan*, 693 S.W.2d 164, 166 (Mo.App.E.D.1985). Despite the fact that a court may impute income to a party under certain circumstances, an award of child support must be supported by evidence of the parent's ability to pay. *In re Marriage of Garrison*, 846 S.W.2d at 776.

Husband's most recent job, to which he hoped to return soon, paid $5.50 per hour, or a gross monthly income of $953.33. Since his layoff, he had received unemployment compensation of $175 per week, but had sought other work. There was no evidence indicating that Husband's last wage level was only a temporary fluctuation in his earnings. *See Keck v. Keck*, 820 S.W.2d at 729. In the instant case, there was no evidence about what type of work Husband did at La–Z–Boy, or that similar work, or other jobs providing the income imputed to him, were available in the area. Consequently, there was no evidence of an impending increase in Husband's income, or that he could realize an increase through additional efforts.

█ The only evidence about his job skills was that he could "weld a little," and that he had some training as a machinist. Although Wife demonstrated that there were jobs advertised in Joplin, Missouri paying $6.25 to $7 per hour (in one instance, $12 per hour), the evidence did not establish that he possessed the required qualifications for any of them.

Under these circumstances, Wife failed to produce substantial evidence to support the imputation of $2,315 as monthly income to Husband for the purposes of calculating child support pursuant to Rule 88.01. *See Cowen v. Cowen*, 869 S.W.2d at 776–77; *In re Marriage of Lowe*, 860 S.W.2d at 818. Since this was the basis for increasing the amount of Husband's child support obligation, that portion of the judgment must be reversed.

Husband also contends that the trial court erred in not granting his motion to modify by decreasing the child support. He argues that: (1) at the time of the trial, his only income was unemployment benefits of $758 per month; (2) Wife's gross monthly income was $573; and (3) based upon those incomes, the amount of his child support obligation,

**3.** *See Reinert v. Director of Revenue*, 894 S.W.2d 162, 164 (Mo.banc 1995) (holding that even though the trial court could disbelieve a witness, the record would not support a finding contrary to the only evidence on the matter in issue). *See also Brandon v. Labor & Indus. Relations*

*Comm'n,* 759 S.W.2d 900, 902 (Mo.App.E.D. 1988) (holding that while the Industrial Relations Commission could believe or disbelieve the testimony of a witness, it could not infer something which was contrary to the unequivocal and unimpeached testimony on the subject).

presumed to be correct under Rule 88.01, was $167 per month.

■ Husband, however, had the burden to prove a substantial and continuing change of circumstances to support the affirmative relief he sought in his motion to modify. His request for relief in that motion was based on his decreased earnings since the last support order in 1990 when he was earning approximately $22,000 per year at La–Z–Boy. Merely showing a decrease in earnings was insufficient. *In re Marriage of Stanley,* 793 S.W.2d at 488. As a part of his burden in seeking to lower his child support payments based on his decreased earnings, Husband had the burden to show that the decrease in his earnings was involuntary and continuing. *Forhan v. Forhan,* 693 S.W.2d at 166.

As indicated above, the only evidence concerning the termination of Husband's job at La–Z–Boy was his testimony that he did not voluntarily quit, and that he was terminated because of a dispute over a work-related injury. The trial court, however, may believe or disbelieve all, part or none of the testimony of any witness, and the mere fact that the moving party's evidence is uncontroverted may not be sufficient to satisfy his or her burden of persuasion. *Barnes v. Bank of Bourbon,* 619 S.W.2d 906, 907 (Mo.App.S.D. 1981). We are to give due regard to the trial court's opportunity to judge the credibility of witnesses. Rule 73.01(c)(2).

■ The trial court was, therefore, entitled to disbelieve Husband's testimony that the loss of his job at La–Z–Boy was involuntary. Where, as in this case, there was no request for findings of fact and conclusions of law on the matters in issue here, and the trial court made none, all facts are presumed found in accord with the judgment, and the judgment is to be upheld under any reasonable theory presented and supported by the evidence. *Lohrmann v. Carter,* 657 S.W.2d 372, 376 (Mo.App.S.D.1983). Under these circumstances, we are unable to conclude that the trial court erred in denying relief to Husband based on the loss of his job at La–Z–Boy.

■ We also note that the child support order made in 1990 for the benefit of his son was not the only child support order Husband was seeking to modify. He was also seeking to modify the one made in 1986 for the benefit of his daughter. There was no evidence, however, about Husband's income when the 1986 order was entered. A change of circumstances sufficient to support a modification must be proven by detailed evidence. *Vance v. Vance,* 852 S.W.2d at 193. A decrease in income is one of the things which a parent must show in a modification proceeding in order to support a reduction in the amount of child support. *Markowski v. Markowski,* 736 S.W.2d 463, 466–67 (Mo.App. W.D.1987). There was, therefore, no evidence to support a finding that Husband's income at the time of the trial in question was less than when the 1986 child support order was entered.

We find that the trial court erred in sustaining Wife's "Counter Petition" and in increasing the amount of monthly child support payments based on income which the court imputed to Husband. We cannot conclude that the trial court erred, however, in failing to grant the relief sought by Husband in his motion to modify.

That portion of the judgment which increased the amount of child support owing by Husband is reversed. Otherwise, the judgment is affirmed, including but not limited to that portion of the judgment ordering Husband to obtain and maintain dependent health insurance on the minor children, about which no issue was raised on this appeal. Because we are reversing that portion of the judgment increasing the child support payments, but not that portion requiring Husband to maintain health insurance on the children, we are remanding the case to the trial court for a determination of whether Husband should receive a credit against his child support payments in recognition of the expense of such health insurance. In doing so, the trial court may determine to take additional evidence. The case is, therefore, remanded to the trial court for further proceedings and for entry of a judgment consistent with this opinion.

BARNEY, P.J., and PREWITT, J., concur.