**Cheri Lynn (Hoyt) QUACKENBUSH, Respondent,**

**v.**

**Joseph Lee HOYT, Appellant.**

No. 20447.

Missouri Court of Appeals, Southern District, Division Two.

March 25, 1997.

David G. Neal, Eminence, for appellant.

Craig A. Smith, Daniel, Clampett, Powell & Cunningham, Springfield, for respondent.

PARRISH, Judge.

Joseph Lee Hoyt (Father) appeals an order modifying a dissolution of marriage judgment with respect to child support and a change in visitation with two of the children born of his marriage to Cheri Lynn Quackenbush (Mother). This court affirms.

Father's and Mother's marriage was dissolved July 28, 1988. Mother was awarded custody of their three children, Christy Malynne Hoyt, Brandon Joseph Hoyt and Austin David Hoyt. The children's ages were 10, 5 and 3, respectively, at the time of the dissolution of marriage. Father was granted visitation two weekends per month, six weeks in the summer, one week during Christmas vacation, alternating major holidays of Easter, Memorial Day, Labor Day and Thanksgiving, and on other reasonable occasions established by mutual agreement of the parties. Father was ordered to pay child support in the amount of $190 per month per child and to maintain health insurance on the children. The judgment allowed Father to claim all three children as dependents for income tax purposes.

The modification that is the subject of this appeal is a second modification. The first modification was made August 8, 1991. Father's child support was increased to $1,152 per month for the three children, effective September 1, 1991. A joint custody order was entered; however, Mother remained the primary physical custodian of the children.

Both parties sought a second modification. Father sought custody of the children or, alternatively, modification of the amount of child support he was required to pay. Mother sought termination of Father's "visitation rights and privileges."

Following a lengthy hearing on the motions to modify, an order was entered modi-

fying the dissolution judgment. The trial court found that Father had married again and a child, Bryan Cody Hoyt, had been born to him and his present wife, Sheila Hoyt; that Father adopted Justin Curtis Hoyt, Sheila's natural child; that both children were dependent on Father for support.

The trial court found that Father's income had been reduced since the last modification of the dissolution judgment. It further found that there was no substantial evidence that the reduction in Father's income had been intentionally or purposely caused by him to avoid paying child support.

The trial court continued the joint custody but made Father Christy's primary custodian and gave Mother scheduled periods of visitation with her.[1] Mother remained primary custodian of Brandon and Austin. The amount of child support payable by Father for the two boys was reduced based on Father's reduction in income. Father was ordered to pay child support in the amount of $505 per month. The trial court found $505 was the presumed child support amount calculated pursuant to Rule 88 and Form 14 stating, "[T]here exists no evidence in this case to indicate that the guideline amount would be unjust or inappropriate."

The trial court's order states that Mother, "although capable of being employed, is not now working and has no income." No income was imputed to her. The order further states:

> In calculating [Father's] child support obligation, consideration must be given for the direct and unreimbursed support he provides for the child born to him and his new wife, Bryan Cody Hoyt, now in his custody, but the Court will not take into account any direct or unreimbursed support he

provides for his adopted child, Justin Curtis Hoyt, now in his custody.

Father's first allegation of trial court error, Point I, contends the trial court erred in calculating the amount of presumed child support because it failed to follow the required procedures for calculating child support in "split custody" cases; that the trial court "ignored the support for the child in the father's custody entirely, and the [trial] court further erred in allowing as a credit the direct support the father provides for his child born to him during his subsequent marriage but discriminatorily eliminating any consideration of the support he provides for the child he adopted."

The trial court used one Form 14 to calculate presumed child support. Mother was designated as the custodial parent. No income was attributed to her. The child support to be paid by Father as non-custodial parent was calculated as follows:

| | |
|---|---|
| Monthly gross income | $2,276.00 |
| **Adjustments** | |
| a. Minus other Court or administratively ordered child support payments being made: | $-0- |
| b. Minus other Court ordered spousal support payments being made: | $-0- |
| c. Minus support responsibility for other children in primary physical custody | $348.00 |
| Adjusted gross income | $1,926.00 |
| Child support amount (From child support chart) | $ 505.00 |
| Presumed Child Support Amount | $ 505.00 |

The date on the Form 14 was "1–19–94." The form contained the statement, "Submitted By: Court—under new guide lines."[2]

---

1. The Honorable Arthur B. Cohn was assigned to hear the case that is the subject of this appeal. Judge Cohn heard evidence and prepared a memorandum stating his findings and directing preparation of an order modifying the dissolution judgment for his review. Judge Cohn died after the memorandum was prepared and distributed to the attorneys of record. No order modifying the dissolution judgment had been entered at the time of his death. Thereafter, the Honorable D. Gregory Warren was assigned to hear the case. Judge Warren entered the order modifying the

dissolution judgment consistent with Judge Cohn's findings.

2. The "new guide lines" refers to Form 14, its directions, comments for use and schedule of basic child support obligations as amended November 23, 1993, effective April 1, 1994. The parties do not challenge its applicability to the facts in this case. That issue, not having been raised, is not addressed in this opinion.

Father testified that his income for 1992 was $27,306. That amount divided by 12 is $2,275.50. The amount of child support obligation for two children based on adjusted combined gross income of $1,900 is $517. The amount on the line on the chart immediately above the line for adjusted combined gross income of $1,900 is $505. The $505 amount is based on adjusted gross income of $1,850. The trial court apparently used an amount from the wrong line on the schedule.

There are two allegations of error set out in Point I. It alleges the trial court failed to follow applicable rules in figuring support in "split custody" cases. It also alleges the trial court incorrectly allowed Father a credit for "direct support" attributed to the son born of his second marriage, but erroneously failed to consider Father's support obligation to his adopted son.

The Comments for Use of the amended Form 14 prescribe how to calculate the presumed child support amount in "split custody" cases. Comment C states:

Split custody refers to those circumstances in which there is more than one child and each parent has physical custody of one or more but not all children. In those instances, the support amount is calculated by using two Forms 14. A Form 14 is completed for the number of children in the custody of one parent, using all income data and deductions for each parent, and disregarding the child(ren) in the custody of the other parent. The expenses that are in addition to the presumptive child support amount ... should be only for the child(ren) for whom the support amount is being calculated. In those instances where one parent is providing the costs of an item for all children, i.e., health insurance, the gross amount of such cost is to be prorated among the children for purposes of completing the form. The same process is then to be undertaken for the other parent. After completion of the multiple Form 14 worksheets, subtract the lesser amount from the greater. Use the difference between these two obligations as the child support order payable by the parent with the larger of the two obligations.

■ The trial court did not complete a second Form 14 worksheet. However, since Mother had no income, had a second Form 14 been completed, no part of the presumed child support would have been attributed to her. All of the amount of presumed child support calculated for Christy would have been attributed to Father. The failure to complete a second Form 14 is of no effect.

■ The second claim of error in Point I is directed to the trial court's decision to consider Father's obligation to support Bryan, his natural child with his present wife, but not to consider Father's obligation to support Justin, his adopted child. The trial court took a deduction for Bryan on the Form 14 worksheet as "support responsibility for other children in primary custody," but did not do so for Justin. Based on Father's monthly gross income of $2,276, had the trial court deducted the amount applicable to two "other children," $601 would have been deducted.

The trial court's decision to treat financial obligations for the natural child differently than those for the adopted child was erroneous. The line number on the Form 14 worksheet used to deduct "support responsibility for other children in primary physical custody" is 2c. Instructions for line 2c state, "The adjustment applies to a party's natural *or adopted children,* but not to stepchildren." [Emphasis added.]

■ Nevertheless, this error is of no consequence. Father was the moving party for purposes of seeking a reduction in child support. A parent who petitions to increase or decrease an order of support is not entitled to a deduction from his or her gross income for "the amount of financial responsibility" he or she has for "children who are in the primary physical custody of that parent and who are not children involved in [the modification] action." *See In re Marriage of Bloom,* 926 S.W.2d 512, 516–18 (Mo.App. 1996).

The directions with respect to "Worksheet, line 2c" state:

Use of the adjustment is appropriate at the time of the establishment of a child support order or in a proceeding to modify

an existing order. However, it may not be used in a modification proceeding by a moving party who petitions to increase or decrease an existing order of support for the child or children who are the subject of the proceeding.

The trial court erred in taking any deduction on line 2c of the Form 14 worksheet. This is an error to Father's benefit from which Mother did not appeal. Point I is denied.

Father alleges in Point II that the trial court erred in failing to impute income to Mother for purposes of calculating Father's presumed child support amount. He argues Mother has an obligation to assist in providing financial support for the children; that she has sufficient education and work experience to secure employment.

Mother was not employed at the time of the dissolution of her and Father's marriage in 1988. She had been employed during 1992 at a hospital in West Plains. She described the work she did there as "[a]ccounts receivable." She later worked at a clinic and a surgery center. Mother testified that her income for 1992, as reflected on her income tax return, was $8,112.

Mother's employment terminated March 31, 1993. She explained, "[A] corporation took over the company. When the corporation took over the company, they said they had too many employees. Since I just started in January, I was the new employee so I was let go." Her rate of pay at the time she was terminated was $6.00 per hour.

Mother's testimony was given August 18, 1993. She told the trial court she had looked for employment after her job was terminated but quit looking that summer because of the cost of child care. She testified that child care would have cost $120 per week. The trial court inquired if there would be child care expense if Mother worked during the school year. Mother told the court there would be; that the cost would "[p]robably be about $40 a week."

Mother was asked if she was in good health and capable of working. She answered, "If I financially needed to, yes." The trial court found that Mother was capable of being employed, but was not then working; that she had no income. In determining that Mother possessed sufficient resources to pay her attorney fees, the trial court stated, "Although [Mother] is not now employed, that is by her own choice...." On the Form 14 worksheet the trial court showed Mother with "–0–" monthly gross income and assigned no child support obligation to her.

Directions for Completion of Form 14 include in the directions applicable to line 1 of the worksheet:

If either parent is unemployed or underemployed, child support may be calculated in appropriate circumstances based on a determination of potential income. To determine potential income, the court or administrative agency may consider employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, prevailing job opportunities in the community, and whether that parent is custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

A trial court may impute income to a parent to prevent him or her from escaping responsibilities to support a child or children by deliberately reducing their income. *Walker v. Walker*, 936 S.W.2d 244, 247 (Mo. App.1996). "In order to avoid such a situation, a court may, *in proper circumstances,* impute income to a spouse according to what that spouse could earn by use of his or her best efforts to gain employment suitable to that spouse's capabilities." *Id.*, quoting *Jensen v. Jensen,* 877 S.W.2d 131, 136 (Mo.App. 1994) [emphasis in original].

"Proper circumstances" have been considered to include situations where a parent has voluntarily reduced his or her income without justification. *Devries v. Devries,* 804 S.W.2d 825, 827 (Mo.App. W.D.1991). Also included are situations where a parent involuntarily lost a job but (1) failed to use his or her best efforts to obtain a new job, *In re Marriage of Garrison,* 846 S.W.2d 771, 776 (Mo.App. S.D. 1993); (2) refused to accept employment

offers, *Luker v. Luker,* 861 S.W.2d [195] at 199 [ (Mo.App.1993) ]; or (3) failed to show that the unemployment was other than temporary, *Foster v. Foster,* 844 S.W.2d 559, 562 (Mo.App. E.D.1992).

*Walker,* 936 S.W.2d at 247–48.

■ Mother's employment was involuntarily terminated approximately one week before the first day of testimony in this case. At the conclusion of the first day's evidence, the case was recessed from April 6 until August 18. On the date the testimony was completed, some four months later, she remained unemployed. She explained, however, that child care costs during the children's school vacations would be $120 per week; that costs during the school year would be $40 per week. Mother testified that she looked for employment after her job was terminated on March 31, 1993, but quit looking during the summer while the children were out of school. There was no evidence that she had turned down any employment offer.

The trial court, at the conclusion of the evidence presented on April 6, entered an "interim order" as to custody, visitation and support for the children. Mother was awarded temporary custody of Christy one weekend per month during the remainder of the school year. Father was awarded temporary custody of Brandon and Austin one weekend per month during the remainder of the school year. Father was awarded temporary custody of all the children the first full week of each of the summer months. Mother was awarded temporary custody of all the children for the remainder of the summer months until the date when the case would be reopened.

The trial court could have determined it was reasonable for Mother not to have actively pursued employment during the summer months while the children were out of school. It could have concluded it was in the children's best interests, in view of strained relations between Mother and Christy, for Mother to spend time with the children during the time all three were in her home.

"[I]mputing income should occur only 'in appropriate circumstances.'" *Stanton v. Abbey,* 874 S.W.2d 493, 499 (Mo.App.1994). "What constitutes 'appropriate circumstances' will depend on the facts and must be determined on a case-by-case basis." *Id.* Under the circumstances of this case, this court finds no abuse of discretion by the trial court in failing to impute income to Mother for purposes of calculating child support. There was sufficient evidence from which the trial court could have concluded Mother's presence in the home up to the date when evidence was completed was appropriate; that she better met the children's needs by being with them than by working outside the home, particularly in view of the substantial expense that would have been required for child care. Point II is denied.[3]

■ Father's Point III is directed to his visitation rights with Brandon and Austin. The order modifying the dissolution decree reduced his scheduled visitation with Brandon and Austin from two weekends per month to one weekend and from six weeks during the summer to two weeks. Father contends the trial court abused its discretion in making these changes in that "there was no evidence that Father was not a fit parent or that the physical or emotional heath [sic] of the children was endangered, and the reduced amount of visitation with his sons is patently insufficient to maintain any type of meaningful relationship with them." He argues, also, that failure of the trial court to include directions concerning transportation of the children for exchanges during visits was error.

---

3. In finding that the trial court did not abuse its discretion by not imputing income to Mother, this court is mindful that there have been a number of cases in which trial courts' decisions to impute income to noncustodial parents have been upheld. *See, e.g., Walker v. Walker, supra; Jensen v. Jensen, supra; Holmes v. Holmes,* 878 S.W.2d 906 (Mo.App.1994); *In re Marriage of Garrison,* 846 S.W.2d 771 (Mo.App.1993). Some have specified factors that may be considered in ascertaining if "appropriate circumstances" exist for imputing income to a parent. *See Woolsey v. Woolsey,* 904 S.W.2d 95, 99 (Mo.App.1995); *Stanton v. Abbey, supra,* at 499. Only one case was found, however, that presented the question of whether a trial court erred in failing to impute income to a parent, *Cowen v. Cowen,* 869 S.W.2d 774 (Mo.App.1994). *Cowen* is factually dissimilar to this case. It held, however, as is held here, that failure to impute income was not error.

Section 452.400.2, RSMo 1994, addresses modification of visitation rights. It states, as applicable to Point III:

The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development. . . .

Father's argument that the change in his visitation rights was not warranted because there was no evidence that he was not a fit parent or that the physical or emotional health of the children was endangered is a non sequitur. Modification of a visitation order by terminating it or requiring visitation to be supervised constitutes a "restriction" for purposes of § 452.400.2 so as to require an endangerment-impairment finding. *See P.L.W. v. T.R.W.*, 890 S.W.2d 688, 691 (Mo.App.1994).

A reduction in time of a parent's scheduled visitation is not a "restriction" of visitation rights and, therefore, does not require a finding of physical endangerment or impairment of emotional development. *Strueby v. Strueby*, 876 S.W.2d 642, 644 (Mo.App.1994). *See In re Marriage of Amos*, 843 S.W.2d 946, 950–53 (Mo.App.1992).

Father's visitation rights were reduced, not restricted. The criterion for change of visitation is best interests of the child. *James v. James*, 853 S.W.2d 425, 427 (Mo.App.1993). In child custody matters it is presumed a trial court has studied all the evidence and decided the issue in a manner consistent with the best interests of the children. *Ledbetter v. Sampson*, 924 S.W.2d 617 (Mo.App.1996). Point III does not assert otherwise. "The questions for decision on appeal are those stated in the points relied on." *In re Marriage of Flud*, 926 S.W.2d 201, 206 (Mo.App.1996). The claim of error with respect to reduction of Father's scheduled visitation time with Brandon and Austin is denied.

Father's complaint that the trial court did not include arrangements for transportation of the children is, likewise, of no consequence. "A trial court has broad discretion to apportion travel expenses between parents when exercising child custody rights." *Larkins v. Larkins*, 921 S.W.2d 152, 153 (Mo.App.1996). Terms of a resulting order are reviewed only for a manifest abuse of that discretion. *Ronzio v. Ronzio*, 673 S.W.2d 100, 101 (Mo.App.1984).

Father characterizes the arrangements that existed previously for transporting the children for visitation as "elaborate." The trial court could have sought, by its elimination of such provisions, to encourage the parties to work with one another rather than continuing a series of new motions for modification that could result in uncomplicated issues producing complex solutions. The trial court's failure to provide for specific transportation arrangements for facilitating visitation rights is not "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration" so as to constitute an abuse of discretion. *Anderson v. Robertson*, 402 S.W.2d 589, 593 (Mo.App.1966). Point III is denied.

Point IV is directed to the trial court's order concerning claiming income tax exemptions for the children. The order modifying the dissolution judgment permits each party to claim the child or children in their primary physical custody as dependents for income tax purposes. Father contends the trial court abused its discretion in not allowing him to claim all three children as dependents. He argues that since Mother was not ordered to provide financial support for any of the children, it was error for her to be permitted to claim exemptions for income tax purposes for any of the children.

Title 26, U.S.C., is the Internal Revenue Code of 1986, herein referred to as "the code" or cited "IRC". Income tax provisions applicable to exemptions for children of divorced parents are found in § 152 of the code. It provides, in subsection (e), that the custodial parent is entitled to the exemption unless one of three exceptions occur. One exception applies to circumstances in which a multiple support agreement as permitted by § 152(c) of the code is in effect. There is no multiple support agreement in this case.

A second exception relates to decrees or agreements executed before January 1, 1985—it is not applicable. A third exception, found at § 152(e)(2), involves a custodial parent who relinquishes the right to claim the exemption. Such a relinquishment is made, in writing, on a form provided by the Internal Revenue Service. *See Corey v. Corey*, 712 S.W.2d 708, 710–11 (Mo.App.1986). "A trial court may order a custodial parent to execute the necessary release (IRS form 8332) in favor of a noncustodial parent who is paying child support in appropriate cases." *Vohsen v. Vohsen*, 801 S.W.2d 789, 791 (Mo. App.1991).

Father argues that the trial court abused its discretion in failing to allow him to claim income exemptions for all three children and failing to order Mother to execute the applicable IRS form. This court does not find Father's argument persuasive.

Mother's brief suggests:

The argument assumes (a) that Father's payment of the modified presumed child support amount covers all of the expenses of raising and caring for the children; (b) Mother's household contributes nothing financially to the upbringing of the two boys; and (c) most repugnantly, Mother's contributions as a nurturing parent of the boys and the time she spends with them as they grow up is worth nothing. None of these assumptions is correct, as should be apparent to even the causal modern-day observer.

Mother's response sufficiently answers Point IV. It is denied.

■ Point V asserts trial court error in failing to modify Father's child support retroactive to the date his motion to modify was served on Mother. He contends that since Christy did not reside with Mother throughout the time his motion to modify was pending, Mother realized "an unjustified windfall"; that he sustained "a [sic] inappropriate penalty."

The parties' marriage was dissolved July 1988. Mother was awarded custody of the three children. Father was ordered to pay child support in the amount of $190 per month per child for total child support of $570 per month. The child support was modified in 1991. The amount of child support Father was ordered to pay was increased to $1,152 per month. In August 1992 Christy began residing with Father. No change of custody had been authorized. Sometime before the hearing on Father's request for change of custody, he reduced the amount he was paying, without authorization, to $689 per month.

The first day the trial court heard evidence on the motion to modify that is the subject of this appeal was April 6, 1993. At the end of the day, "interim orders" were entered concerning visitation and child support. The case was continued until August 18, 1993, when the remainder of the evidence was presented. Per the April 6 interim child support order, Father was to pay $768 for May 1993 and $864 per month for June, July and August. The order modifying the dissolution judgment was entered August 1, 1995. It set Father's child support at $505 per month. It was retroactive to November 1, 1993.

■ "The trial court has discretion to determine the effective date for modified child support and that decision will not be reversed in the absence of a clear abuse." *Anderson v. Anderson*, 861 S.W.2d 796, 802 (Mo.App.1993). This court finds no abuse of discretion by the trial court making its order modifying child support effective November 1, 1993. Point V is denied. The order modifying the dissolution judgment is affirmed.

MONTGOMERY, C.J., and SHRUM, J., concur