**Charles Robert PENISTON, Appellant,**

v.

**Catherine Hope PENISTON, Respondent.**

**No. WD 63521.**

Missouri Court of Appeals, Western District.

May 10, 2005.

Craig D. Ritchie and Tara J. Cluck, Saint Joseph, MO, for appellant.

David P. Macoubrie and Danette L. Rardon, Chillicothe, MO, for respondent.

Before: EDWIN H. SMITH, C.J., and HOWARD and NEWTON, JJ.

EDWIN H. SMITH, Chief Judge.

Charles Peniston appeals the judgment of the Circuit Court of Livingston County dissolving his marriage to the respondent, Catherine Peniston, with respect to its awards of visitation and child support concerning the parties' minor child, Robert.

The appellant raises three points on appeal. In Point I, he claims that the trial court erred in awarding him visitation with

Robert because the court's award was not reasonable, as required by § 452.400.1.[1] In Point II, he claims that the trial court erred in awarding the respondent child support for Robert in the presumed child support amount (PCSA) of $428 per month, as calculated pursuant to the respondent's Form 14, imputing gross monthly income to the appellant, because the imputation of income was not supported by the record. In Point III, he claims that the trial court erred in awarding the respondent retroactive child support of $3,789 because that amount was predicated on the court's award of monthly child support, which he challenges in Point II as being erroneous.

We affirm.

### Facts

The parties were married on May 21, 1995, in Chillicothe, Missouri, and separated on August 19, 2002. One child was born of the marriage, Robert Peniston, born December 5, 1994.

On August 23, 2002, the appellant filed a petition for dissolution of marriage in the Circuit Court of Livingston County. The respondent filed her answer and cross-petition on September 20, 2002. In his petition, the appellant sought joint legal and physical custody of Robert, while the respondent, in her cross-petition, sought joint legal and sole physical custody.

Before trial, both parties filed their income and expense statements. In his statement, filed on March 4, 2003, the appellant listed his gross monthly income as $2,635.53. On June 10, 2003, the parties' petitions were taken up and heard. With respect to child support, the appellant testified that he had been self-employed for approximately four years, working as an auctioneer, farmer, and dog breeder, and

that for a two-month period in early 2003 he was employed as a temporary truck driver. He further testified that when he filed his original income and expense statement, he was working as a temporary truck driver; but that employment had ceased at the time of trial. Accordingly, with leave of court, he amended his income and expense statement to exclude the compensation he was receiving from his temporary employment as a truck driver, resulting in gross monthly income of $1,500. The amended statement was admitted at trial. The appellant testified that, although he was not actually making $1,500 per month, he believed he could. The respondent testified that the parties' commercial dog kennel alone, which was awarded to the appellant as marital property, was capable of producing approximately $40,000 of annual income.

On July 11, 2003, the trial court entered its judgment of dissolution. As to custody, the court ordered that the parties were to have joint legal custody and that the respondent was to have "primary physical custody." In addition, the court ordered that the appellant have visitation with Robert: (1) the first weekend of each month; (2) three separate two-week increments during the summer, for a total of six weeks; (3) Father's Day; (4) alternating holidays; and (5) alternating birthdays. As to child support, the appellant was ordered to pay the respondent $428 per month. In calculating its award, the trial court accepted the respondent's Form 14, which, as to the appellant's gross monthly income, reflected a figure of $2,635.53. In addition, the court awarded the respondent retroactive child support of $3,789, based on its award of $428 in monthly child support.

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

On August 8, 2003, the appellant filed a "MOTION TO RECONSIDER VISITATION AND CHILD SUPPORT AMOUNT, OR IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL," which was taken up and heard on September 22, 2003. On October 21, 2003, the trial court entered an amended judgment, which expanded the appellant's visitation rights to include Wednesday evenings.

This appeal followed.

## I.

■ In Point I, the appellant claims that the trial court erred in awarding him visitation with Robert because the court's award was not reasonable, as required by § 452.400.1. Specifically, he claims that the trial court's award of visitation was unreasonable in that it failed to provide him with alternating weekend visitation. We disagree.

■ Before addressing the merits of the appellant's claim, we must first address a misnomer in the trial court's judgment. In that regard, with respect to custody, the judgment provides: "The court finds that it is in the best interest of the child for the parties to be awarded joint legal custody of the minor child, with [the respondent] being awarded primary physical custody of the minor child. [The appellant] shall have visitation at all reasonable and proper times and as set forth herein." As we explained, however, in *Loumiet v. Loumiet*, 103 S.W.3d 332, 338–39 (Mo.App. 2003), § 452.375, which governs child custody, speaks only in terms of joint or sole physical custody, such that the term "primary physical custody" should be avoided. Thus, inasmuch as the appellant was awarded visitation rights, it is clear that what the trial court intended was for the respondent to have sole physical custody.

■ In claiming as he does in this point, the appellant is challenging the trial court's application of the law, claiming that the court misapplied § 452.400.1 by not awarding him reasonable visitation. Where a misapplication of law is asserted, we review *de novo*. *Jackson v. Mills*, 142 S.W.3d 237, 240 (Mo.App.2004).

In awarding the appellant visitation with Robert, the trial court ordered that he have unsupervised visitation: (1) the first weekend of each month from Friday at 6:00 p.m. to Sunday at 6:00 p.m.; (2) every Wednesday evening from 4:00 p.m. to 8:00 p.m.; (3) three separate two-week increments during the summer, for a total of six weeks; (4) Father's Day; (5) alternating holidays, including Easter, Memorial Day, Labor Day, July 4th, Labor Day, Thanksgiving, and Christmas; and (6) alternating birthdays. The appellant claims that this schedule of visitation is not reasonable, as a matter of law, in that it does not include alternating weekends. He contends that, as a matter of law, for an order of visitation to be reasonable, under § 452.400.1, it must include visitation on alternate weekends, citing *Siegenthaler v. Siegenthaler*, 761 S.W.2d 262 (Mo.App.1988).

In *Siegenthaler*, the appellant-father claimed, *inter alia*, that the trial court's visitation order was in error. *Id.* at 266. After reciting the trial court's visitation order, the Eastern District of this court, without any analysis of applicable statutes or case law, stated: "This court believes that the welfare of the children requires some other disposition." *Id.* The court then proceeded to set out a modified visitation schedule to be followed. The modified visitation schedule provided, as did the original schedule, that the appellant was to have visitation "on two weekends per month." It did not provide for alternating weekends as the appellant argues here. In any event, the issue of whether visita-

tion on alternating weekends is required to constitute a reasonable order of visitation, under § 452.400.1, was not presented to the court. Hence, *Siegenthaler* cannot be cited for the proposition that there is some minimum standard of visitation that must be awarded in order to constitute reasonable visitation under the statute. As the Eastern District subsequently recognized in *Rothfuss v. Whalen,* 812 S.W.2d 232, 235 (Mo.App.1991), the custody decision in *Siegenthaler* was not a determination of the "minimally appropriate" visitation to be awarded. Rather, the "custody decision in *Siegenthaler* was based upon the determination that, upon the particular facts of the case, the welfare of the children required a disposition different from the one entered by the trial court." *Id.* This is consistent with the statutory scheme for determining custody and visitation.

■ Section 452.400.1, which governs initial determinations of visitation, provides, in pertinent part, that: "A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his or her emotional development." Unlike § 452.375.2, governing initial determinations of custody, § 452.400.1 does not require that visitation be determined in accordance with the best interests of the child. However, case law has imposed this requirement. *Scott v. Scott,* 147 S.W.3d 887, 898 (Mo.App.2004) (citing *Searcy v. Searcy,* 38 S.W.3d 462, 469 (Mo. App.2001)). And, while the case law does require that visitation be determined in accordance with the best interests of the child, it does not set forth the factors that are to be considered by the trial court in determining a child's best interests for purposes of an initial order of visitation. Case law does, however, provide that the

best interests factors of § 452.375.2 are to be considered when determining a child's best interests for purposes of modifying a visitation order. *Baker v. Welborn,* 77 S.W.3d 711, 720 (Mo.App.2002). Logically then, those same factors would have to be considered in determining a child's best interests for purposes of an initial order of visitation.

Having determined that each order of initial visitation, like a modification of visitation, must be determined in accordance with the best interests of the child, after considering all relevant factors, including those set forth in § 452.375.2, there logically would not be a minimum amount of visitation that would have to be awarded to be considered reasonable, satisfying § 452.400.1. Rather, the reasonableness of each order must turn on its own facts and circumstances, when considered in light of all relevant factors, including those found in § 452.375.2, with no set formula for applying those factors. *See Kennedy v. Kennedy,* 969 S.W.2d 310, 313 (Mo.App. 1998) (explaining that there is no set formula for applying the factors of § 452.375.2).

Given the foregoing, the appellant's claim that the trial court's visitation award was unreasonable because it violated § 452.400.1 in that it did not include alternate weekends is without merit.

Point denied.

## II.

■ In Point II, the appellant claims that the trial court erred in awarding the respondent child support for Robert in the presumed child support amount (PCSA) of $428 per month, as calculated pursuant to the respondent's Form 14, imputing gross monthly income to the appellant, because the imputation of income was not supported by the record. Specifically, he claims that the record did not support the

imputation of income in that the only evidence in the case on the issue demonstrated that the "short, [temporary] job [in which the imputation of income was based] had terminated" prior to trial.

Our standard of review, with respect to child support rulings, is set forth in *Conrad v. Conrad,* 76 S.W.3d 305, 308 (Mo. App.2002) (footnotes and internal citations omitted):

> In determining an award of child support in any proceeding, § 452.340.8 and Rule 88.01 require the trial court to follow the two-step procedure set forth in *Woolridge v. Woolridge,* 915 S.W.2d 372, 379 (Mo.App.1996), which was approved by the Missouri Supreme Court in *Neal v. Neal,* 941 S.W.2d 501, 504 (Mo. banc 1997). In the first step, the trial court must determine and find for the record the PCSA in accordance with Form 14. This required determination and finding can be done by the trial court's either accepting for the record a Form 14 calculation of one of the parties, or in the event the court "rejects" their Form 14 calculations as being incorrect, by doing its own Form 14 calculation. The trial court can do its own Form 14 calculation by either completing a Form 14 worksheet and making it a part of the record or by articulating on the record how it calculated its Form 14 amount. In the second step, the court, after considering all relevant factors, must determine whether to rebut the PCSA as being unjust or inappropriate. Our review then of an award of child support is essentially one of the trial court's application of the two-step *Woolridge* procedure, applying the standard enunciated in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Hence, in reviewing an award of child support, we review the award, in light of the trial court's application of the *Woolridge* procedure, to determine whether it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. After reviewing and determining that the trial court's application of the *Woolridge* procedure passes the *Murphy v. Carron* standard, we then review for an abuse of discretion with respect to the trial court's rebuttal review of its PCSA calculation.

In determining its child support award, the trial court, as to the first step of the *Woolridge* procedure, accepted the respondent's Form 14, and, as to the second step, chose not to rebut the PCSA as unjust and inappropriate. With respect to the appellant's gross monthly income, the respondent's Form 14 reflected the amount of $2,635.53. In that regard, the court, in its judgment, stated: "The Court imputes income in the amount of $2,635.53 a month to [the appellant], the amount [he] submitted as his income on his original Income and Expense Statement," which was filed by the appellant on March 4, 2003. The question is whether this amount was supported by the record.

It is well settled in the law that a parent will not be permitted to escape his responsibility to support his children by deliberately limiting his work in order to reduce income. *Williams v. Williams,* 55 S.W.3d 405, 414 (Mo.App.2001); *Haden v. Riou,* 37 S.W.3d 854, 861 (Mo.App.2001); *Davis v. Dep't of Soc. Servs.,* 21 S.W.3d 140, 141 (Mo.App.2000); *Perkins v. Perkins,* 21 S.W.3d 184, 186 (Mo.App.2000); *Smith v. Smith,* 969 S.W.2d 856, 858 (Mo. App.1998); *Silverstein v. Silverstein,* 943 S.W.2d 300, 302 (Mo.App.1997); *Walker v. Walker,* 936 S.W.2d 244, 247 (Mo.App. 1996); *Hansen v. Phenicie,* 917 S.W.2d 618, 619 (Mo.App.1996); *Jensen v. Jensen,* 877 S.W.2d 131, 136 (Mo.App.1994). To prevent a parent from avoiding his respon-

sibility to support his children, a trial court may, in proper circumstances, impute income to the parent in determining the court's child support award, based on what the parent could earn by using his best efforts. *Williams*, 55 S.W.3d at 414; *Haden*, 37 S.W.3d at 861; *Perkins*, 21 S.W.3d at 186; *Silverstein*, 943 S.W.2d at 302; *Walker*, 936 S.W.2d at 247; *Jensen*, 877 S.W.2d at 136. "However, it is axiomatic that there must be evidence to support a finding that the parent is deliberately limiting his or her work to reduce income before it is appropriate to impute income." *Davis*, 21 S.W.3d at 141. In other words, "[c]ourts should not impute income where the record does not establish an attempt to evade parental responsibilities." *Smith*, 969 S.W.2d at 859. What constitutes appropriate circumstances to impute income will depend on the facts of the individual case and are to be determined on a case-by-case basis. *Id.; Perkins*, 21 S.W.3d at 186.

**■■■■ Line 1: Gross Income of Form No. 14, DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM NO. 14**, provides, in pertinent part, that income may be imputed "[i]f a parent is unemployed or found to be underemployed." Proper circumstances for imputing income, in determining child support, include both voluntary and involuntary reductions of income by a parent's being unemployed or underemployed. *Walker*, 936 S.W.2d at 247–48. Imputation of income is proper where a parent has voluntarily reduced his or her income without justification. *Perkins*, 21 S.W.3d at 186; *Hansen*, 917 S.W.2d at 619; *Walker*, 936 S.W.2d at 247; *Jensen*, 877 S.W.2d at 136. The most common scenario for voluntary reduction of income without justification is where a parent deliberately quits work to reduce his or her child support. *Hansen*, 917 S.W.2d at 619; *Jensen*, 877 S.W.2d at 136. Imputation of income is also appropriate where the parent voluntarily reduces his or her income with justification, but only if the evidence shows that the parent had failed to use his or her best efforts to obtain new employment. *Perkins*, 21 S.W.3d at 186; *Silverstein*, 943 S.W.2d at 302. Likewise, an imputation of income is proper on that same showing where a parent has had his or her income involuntarily reduced, which would include termination of employment. *Silverstein*, 943 S.W.2d at 302; *Walker*, 936 S.W.2d at 247–48.

As to the appellant's income, the evidence was that he had been self-employed for approximately four years, working as an auctioneer, farmer, and dog breeder, and that, for a two-month period in early 2003, he was employed as a temporary truck driver. The exact amount of his actual income at the time of trial, June 10, 2003, was unclear; however, it was clear that, during the two-month period in which the appellant was self-employed and working as a truck driver, his gross monthly income reached $2,635.53, as indicated on his income and expense statement of March 4, 2003. Hence, by accepting the respondent's Form 14, which listed the appellant's gross monthly income as $2,635.53, the trial court determined that the appellant was underemployed, and that, through his best efforts, he could realize a gross monthly income of $2,635.53.

In determining the appropriate circumstances to impute income, **Comment H** of **Line 1: Gross income** provides:

When determining whether to include imputed income and, if so, the amount to include in a parent's 'gross income,' a court or administrative agency shall consider all relevant factors, including:

(1) The parent's probable earnings based on the parent's work history

during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods;

(2) The parent's occupational qualifications;

(3) The parent's employment potential;

(4) The available job opportunities in the community; and

(5) Whether the parent is custodian of a child whose condition or circumstances make it appropriate that the parent not be required to seek employment outside the home.

Pursuant to the express terms of **Comment H**, these factors are to be considered not only in determining "whether to include imputed income," but the "amount" to impute. And, inasmuch as **Comment H** requires that "all relevant factors" are to be considered in determining whether to impute income and in what amount, the factors expressly stated in the comment are not exhaustive. Thus, in deciding whether the record here supports the trial court's imputation of income, the question is whether there is sufficient evidence in the record from which the trial court could find, in light of all relevant factors, including those set out in **Comment H**, that the appellant was capable of realizing, through his best efforts, gross monthly income of $2,635.53.

In claiming that the record is insufficient to support an imputation of income to him in the amount of $2,635.53, the appellant points to the fact that the temporary job which boosted his income to that figure had terminated and no evidence was presented at trial demonstrating that he would be able to obtain a similar permanent position. The respondent concedes that the record is devoid of any evidence demonstrating that the appellant would be able to obtain a permanent truck driving position, but nonetheless contends that the record is sufficient to support the court's imputation of income. In that regard, she points to the parties' commercial dog kennel, which the trial court, in dividing the parties' marital property, awarded to the appellant.

At trial, the respondent testified that the parties' commercial dog kennel was capable of producing approximately $40,000 of annual income. Specifically, she testified that:

Q. If the Court set over to you the kennel and all the dogs, could we show your income at $40,000? Can you make 40,000 running the kennel?

A. If you have all of those dogs and you are able to do the paperwork and—and be able to get them to the broker and do all of those things like that, yes, you can. There's—there's an ability to make money off of it.

Q. Are you capable of doing that?

A. Sure.

In support of her testimony, the respondent introduced into evidence a copy of a document, the original of which was prepared by the appellant, estimating the kennel was capable of producing $40,012.65 in annual income. When questioned about this document on cross-examination, the appellant testified as follows:

Q. Okay. And [the document is] what you gave to the banker as showing income that you were going to be making?

A. Projected that I possibly could make.

He further stated: "All of that ... was projected what I thought I could make[,] ... it had nothing to do with what I was making." Hence, the appellant essentially admitted at trial that he believed the ken-

nel was capable of realizing annual income of at least $40,000.

The appellant's admission that the kennel was capable of realizing annual income of at least $40,000, combined with the undisputed fact that the appellant was awarded the kennel in the property division, in and of itself justifies the trial court's imputation of income to the appellant in the amount of $2,635.53 per month, or $31,626.36 annually. In other words, the fact that the record is devoid of any evidence demonstrating that the appellant would be able to obtain a permanent truck driving position, which the appellant's claim of error is based upon, does not justify reversal of the trial court's imputation of income to the appellant. Whether or not the appellant can realize gross monthly income of $2,635.53 by obtaining a permanent truck driving position is of no consequence inasmuch as the record would support the fact that he could do so by simply maximizing the utility of the commercial dog kennel he was awarded in the court's property division. Hence, the trial court did not err in awarding the respondent child support in the PCSA of $428 per month based on imputed gross monthly income of $2,635.53.

Point denied.

### III.

In Point III, the appellant claims that the trial court erred in awarding the respondent retroactive child support of $3,789 because that amount was predicated on the court's award of monthly child support, which he challenges in Point II as being erroneous. Given the fact that we rule against the appellant in Point II, finding that the trial court's award of monthly child support is not in error, this point must fail as well. Hence, the trial court did not err in awarding the respondent retroactive child support of $3,789.

Point denied.

### Conclusion

The judgment of the circuit court dissolving the parties' marriage is affirmed in all respects.

HOWARD and NEWTON, JJ., concur.