Phillip M. WILLIAMS, Respondent,

v.

Jennifer A. WILLIAMS, Appellant.

No. WD 57947.

Missouri Court of Appeals, Western District.

Sept. 4, 2001.

406

**408**

Frank S. Stewart, Kansas City, for Respondent.

Robert G. Neds, Kansas City, for Appellant.

Before SPINDEN, C.J., and ULRICH and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Jennifer A. Williams appeals the judgment of the Circuit Court of Platte County dissolving her marriage to the respondent, Phillip M. Williams.

The appellant raises eight points on appeal. In her first seven points, she makes various claims of error with respect to the trial court's division of the parties' property and debts, and its awards of child custody and support, maintenance, and attorney's fees. In Point VIII, she claims that the trial court erred in amending its judgment of October 6, 1999, because it violated due process in that before doing so, the trial court failed to give her an opportunity to be heard as required by Rule 75.01.[1] As to her last point, this court, in a written opinion, previously held that the trial court had violated the appellant's right to due process as claimed, but ordered the case transferred to the Missouri Supreme Court, pursuant to Rule 83.02, due to an apparent conflict between the districts of this court concerning the application of Rule 75.01, with respect to the amendment of a judgment on the court's own motion. The Supreme Court, finding that the purported October 6 "judgment" was not the judgment of the trial court such that Rule 75.01 did not apply and, therefore, the appellant's appeal was properly before this court, retransferred the case to us for consideration of her remaining points on appeal.

As to Points I and VI, we dismiss; as to Points II, III, and VII, we affirm; and as to Points IV and V, we reverse and remand.

### Facts

The parties were married on October 13, 1990, in Parkville, Missouri. There was

---

1. All rule references are to the Missouri Rules of Civil Procedure (2001), unless otherwise indicated.

one child born of the marriage, Lexus Ann Williams, born August 1, 1991. On August 18, 1998, the respondent filed a petition in the Circuit Court of Platte County, Missouri, to dissolve his marriage to the appellant. On September 18, 1998, the appellant filed her answer and cross-petition. With leave of court, she filed her first amended answer and cross-petition on August 9, 1999. The respondent did not file an answer to the appellant's original or amended cross-petition.

The parties' case went to trial on August 13, 1999, at the conclusion of which the trial court took the case under advisement. On October 6, 1999, the court purportedly entered its judgment dissolving the marriage of the parties; dividing the marital and non-marital property; awarding the parties *joint* legal and physical custody of the minor child, with no award of child support;[2] and denying maintenance to the appellant. Thereafter, on October 29, 1999, the court entered its amended judgment, which the Missouri Supreme Court found to be the final judgment of the court, which included an award of child support to the respondent of $177 per month.

This appeal follows.

## Standard of Review

 A judgment of dissolution will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v.*

*Carron,* 536 S.W.2d 30, 32 (Mo. *banc* 1976); *DeMayo v. DeMayo,* 9 S.W.3d 736, 739 (Mo.App.2000). "The burden of demonstrating error is on the party challenging the divorce decree." *Wright v. Wright,* 1 S.W.3d 52, 57 (Mo.App.1999) (citation omitted).

## I.

In Point I, the appellant claims that "[t]he trial court erred in that portion of the judgment of dissolution relating to division of property because R.S.MO. 452.330 requires the court to divide the parties['] marital property, in that the judgment fails to value and/or divide all marital property." The appellant's point relied on does not substantially comply with Rule 84.04(d)(1), governing proper points relied on.

**Rule 84.04(d)(1)** provides:

(1) Where the appellate court reviews the decision of the trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or ac-*

2. As to its award of child custody, the judgment provided:

The Court Orders the best interest of the minor child will be served by [the respondent] and [the appellant] mutually sharing joint physical and legal custody, [the respondent's] residence is designated as the address of the child for mailing and educational purposes. Physical placement of the child shall be with [the respondent].

[The appellant] shall have visitation pursuant to the Parenting Plan attached hereto. The trial court's order is confusing in that although it finds that joint physical custody was in the child's best interests, it orders the physical placement of the child to the respondent. This would seem to be inconsistent with an award of joint physical custody. This issue, however, is not before the court on appeal.

*tion* ], because [*state the legal reasons for the claim of reversible error* ], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error* ]."

. . .

(4) Abstract statements of law standing alone, do not comply with this rule. Any reference to the record shall be limited to the ultimate facts necessary to inform the appellate court and the other parties of the issues. Detailed evidentiary facts shall not be included.

Thus, the rule requires that each point:

(1) identify the trial court's ruling or action that the appellant is challenging on appeal; (2) state the legal reasons for the appellant's claim of reversible error; and (3) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error. The function of this rule is to give notice to the opposing party of the precise matters which must be contended with and to inform the court of the issues presented for review. Rule 84.04(d) sets forth a form for a point relied on that satisfies the [rule's] requirements.

*Franklin v. Ventura,* 32 S.W.3d 801, 803 (Mo.App.2000) (citation omitted).

■ While the appellant does identify the ruling being challenged and states in rather broad terms the legal reason for her claim of error, she wholly fails to "explain in summary fashion why, in the context of the case, [the] legal reasons support [her] claim of reversible error," as required by Rule 84.04(d)(1). Rule 84.04(d)(4); *Perkel v. Stringfellow,* 19 S.W.3d 141, 146–47 (Mo.App.2000). In essence all the appellant states in her point relied on is that the trial court erred in dividing the property because it is required to value and divide all of the property and it did not do so. It does not tell

us how or in what manner the court failed to divide the property or, in fact, what property was not properly divided. "Reference to facts in evidence . . . which support and lead to the conclusions asserted as error is contemplated and required under the rule." *Longmier v. Kaufman,* 663 S.W.2d 385, 390 (Mo.App.1983) (citation omitted). "It is not enough for the point, as here, via conclusions of claimed error to simply say the trial court was wrong without alluding to some evidence or testimony which gives support to such conclusions." *In re Marriage of Myers,* 845 S.W.2d 621, 624 (Mo.App.1992) (citations omitted).

■ It is well-settled that:

[c]ompliance with Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made. Deficient points relied on force the appellate court to search the argument portion of the brief or the record itself to determine and clarify the appellant's assertions, thereby wasting judicial resources, and, worse yet, creating the danger that the appellate court will interpret the appellant's contention differently than the appellant intended or [her] opponent understood.

*Myrick v. E. Broad. Inc.,* 970 S.W.2d 885, 886 (Mo.App.1998) (citations omitted). Given the substantial deficiencies of the appellant's point relied on in Point I, we find that it preserves nothing for us to review. *Saidawi v. Giovanni's Little Place, Inc.,* 987 S.W.2d 501, 504 (Mo.App. 1999).

**II.**

■ In Point II, the appellant claims that the trial court erred in dividing the parties' marital property because in doing so it misapplied the law in that it failed to

use the "undisputed or stipulated value of assets and debts," as required by § 452.325.2.[3] Her claim is without merit.

Section 452.325, the statute on which the appellant cites as the legal basis for her claim of error, provides, in pertinent part:

1. To promote the amicable settlement of disputes between the parties to a marriage attendant upon their separation or the dissolution of their marriage, the parties may enter into a *written separation agreement* containing provisions for the maintenance of either of them, the disposition of any property owned by either of them, and the custody, support and visitation of their children.

2. In a proceeding for dissolution of marriage or for legal separation, the terms of the separation agreement, except terms providing for custody, support, and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable.

(Emphasis added.) By its express terms, § 452.325.2 only applies where the parties have entered into a written separation agreement. Here, the parties did not enter into a written separation agreement such that § 452.325.2 has no application. Thus, the trial court cannot be convicted of error for misapplying § 452.325.2 in dividing the parties' marital property, as the appellant claims in her point relied on.

Point denied.

## III.

In Point III, the appellant claims that the trial court erred in dividing the parties'

marital property because its disproportionate division favoring the respondent was not supported by the evidence. Specifically, she claims that the trial court abused its discretion by awarding her only twelve percent of the marital property. We disagree.

This court will only reverse a trial court's property division if it is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *Wright*, 1 S.W.3d at 57 (citation omitted). An abuse of judicial discretion occurs "when a trial court's ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* (citation omitted). "If reasonable persons can differ about the propriety of the trial court's action, it cannot be said that the trial court abused its discretion." *Id.*

Division of property in a dissolution proceeding is governed by § 452.330.1, which provides, in pertinent part:

the court shall set aside to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property,

3. All statutory references are to RSMo 2000, unless otherwise indicated.

including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for the minor children.

"These statutory factors are not exclusive, and there is no formula respecting the weight to be given the relevant factors which a court may consider." *Nelson v. Nelson,* 25 S.W.3d 511, 517 (Mo.App.2000) (citations omitted). "The division of marital property need not be equal, [rather it] must only be fair and equitable given the circumstances of the case." *Id.* (citations omitted). The fact that one party is awarded a higher percentage of marital assets does not *per se* constitute an abuse of discretion. *Id.* (citation omitted). With respect to factor (4) of § 452.330.1, the appellant admits "that there was ample evidence of misconduct by [her] to justify an unequal division." However, she claims that the evidence did not support the percentage distribution that she contends was effectuated by the court, 12 percent to her and 88 percent to the respondent.

In claiming that the trial court's division of marital property was not supported by the evidence, the appellant relies on the following division and values:

Appellant:

| | |
|---|---|
| 1985 BMW 318 Automobile | $3,000.00 |
| Farmer's Exchange Checking Account | 50.00 |
| Farmer's Exchange Savings Account | 10.00 |
| Child's Furniture and belongings | 500.00 |
| 401k | 2,236.50 |
| Less: | |
| Debt on car | − 3,000.00 |
| Debt to relative | − 1,500.00 |
| NET MARITAL PROPERTY | $1,296.50 |

Respondent:

| | |
|---|---|
| 1993 Lincoln Town Car | $4,000.00 |
| Farley State Bank Checking account | 1,700.00 |
| Sony TV | 800.00 |
| Kitchen table and chairs | 700.00 |
| Gun safe and contents | ? |
| 401k | 2,236.50 |
| NET MARITAL PROPERTY | $9,436.50 |

As to the appellant's listed debts, which she subtracts to arrive at her share of the marital estate, the record reflects that the trial court did not make any findings with respect to their existence, which the appellant asserted as error in Point I. Having determined in Point I that the appellant did not properly preserve this issue for review, logically then there is nothing in the record to support the appellant's assertion that in dividing the marital property and debts, 12 percent to 88 percent, she was ordered to pay debts of $4,500. In addition, we would note that the trial court's judgment, contrary to the appellant's assertion as to the court's division, awarded her, not the respondent, the Sony TV and the kitchen table and chairs.

Adding back to the appellant's marital share the $4,500 in debts not found of record and the $1,500 for the television and kitchen furniture, and subtracting that $1,500 from the respondent's share, we find that the appellant received $7,296.50 in marital property and the respondent $7,936.50, representing a division of approximately 48 percent to the appellant and 52 percent to the respondent, essentially the division asked for by the appellant in her "Statement of Marital and Non-Marital Assets and Debts." When a party asks for a specific property division, that party cannot later complain on appeal that the division asked for was unfair or unjust. *See Bold v. Bold,* 912 S.W.2d 477, 482 (Mo. banc 1995) (holding that where wife listed securities as marital property on her statement of marital and non-marital assets, she could not later argue on appeal that the court erred in designating them as such in its judgment); *Baldwin v. Bald-*

*win,* 905 S.W.2d 521, 525 (Mo.App.1995) (holding that where wife listed accounts as husband's separate property on her statement of marital and non-marital assets and did not contest the separateness of the property at trial, she could not claim error on appeal based on the court's award of the accounts to the husband).

Given the fact that the record does not reflect a property division of 12 percent to the appellant and 88 percent to the respondent, as the appellant asserts, and the fact that the appellant admits that there was "ample" evidence of her marital misconduct to support a disproportionate division, we cannot say that the slight difference in the percentages of the marital property actually awarded to the parties by the trial court constituted an abuse of discretion requiring reversal.

Point denied.

## IV.

In Point IV, the appellant claims that the trial court erred in awarding custody and visitation of the minor child because it failed to make the required domestic violence or abuse findings of § 452.375.13. We agree.

In its judgment, the trial court found, pursuant to " § 452.375.2(6)" that:

1 .... there has been a pattern of domestic violence during the marriage of [appellant] and Respondent.

2 .... over the 8 year period of the marriage, the [appellant] physically and verbally abused and assaulted [the respondent] ... and ... on numerous occasions, [the appellant] slapped, pulled the hair of, and hit [the respondent] in the face with her fists.

3. At least two witnesses observed the results of the violence perpetrated on [the respondent] and another witnessed two assaults when [the respondent] was hit in the face by [the appellant] and his hair was pulled by [the appellant] as she pulled him out the door of the marital residence.

4. A witness who lived with [the appellant] and Respondent for six years, observed verbal or physical fights twice per month, in which [the appellant] was the aggressor, that witness' testimony was that [the appellant] exhibited a violent temper and he saw [the respondent] with blackened eyes and split lips as a result of [the appellant's] assaults.

5. [The appellant's] testimony was that the [respondent] never physically fought back; that she had hit him and her jealousy provoked the fights, though she disputes the number of times she struck him.

6. ... [The appellant], Respondent, and at least two other witnesses testified that the minor child, Lexus, had been present during numerous altercations and one witness would remove her to her room or outside the home during the altercations.

7. ... [P]olice responded to the marital residence as a result of [the appellant's] physical assaults on [the respondent] at least four times during the marriage.

8. ... [I]n 1992, [the appellant] swallowed a bottle or a great number of aspirin; her testimony was that it was an "attention getter". She was hospitalized for five days as a result of that action.

The trial court's reference to § 452.375.2(6) is puzzling because that subdivision of the statute only applies where a pattern of domestic violence is found and the court is awarding custody to the abusive parent as being in the child's best interest. Here, the court awarded custody to the non-abusive parent, the respondent. As such, § 452.375.2(6) would have no application. However, as the appellant

claims in her point relied on, the court, having found that domestic violence had occurred, was nonetheless required by § 452.375.13 to make specific findings of fact to show that the custody or visitation arrangement ordered best protected the child and the respondent, which it did not do, requiring reversal. *Mund v. Mund*, 7 S.W.3d 401, 404 (Mo. *banc* 1999).[4] Reversal is required even though it is unclear how the appellant will be directly benefited by a reversal and remand for the required findings. The findings of § 452.375.13 are required "irrespective of which parent is awarded primary custody or visitation." *Id.* Thus, we are required to reverse and remand the trial court's award of custody and visitation for the trial court to make the requisite findings of § 452.375.13.

## V.

In Point V, the appellant claims that the trial court erred in awarding child support of $177 per month to the respondent because its Form 14 calculation of the presumed child support amount (PCSA), as required by Rule 88.01 and on which it based its award, was incorrect in that in its calculation it imputed gross monthly income to her of $1,040, which was not supported by the evidence. We agree.

▮▮▮ "An award of child support is within the sound discretion of the trial court." *Haden v. Riou*, 37 S.W.3d 854, 860 (Mo.App.2001) (citation omitted). This court will not substitute its judgment for that of the trial court "absent a manifest abuse of discretion and will not disturb an award of child support unless the evidence is 'palpably insufficient' to support it." *Id.* (citations omitted).

▮▮▮ In determining child support in any proceeding, the trial court is re-

quired to determine the PCSA pursuant to the approved Form 14 Worksheet. *Woolridge v. Woolridge*, 915 S.W.2d 372, 378 (Mo.App.1996). This can be done by the court either accepting one of the Form 14 calculations of the parents or by rejecting them and doing its own. *Id.* at 381. "A Form 14 calculation of the PCSA begins with a determination of each parent's gross monthly income." *Honderick v. Honderick*, 984 S.W.2d 205, 212 (Mo.App. 1999). "A parent is not permitted to escape responsibility to his or her family by deliberately limiting his or her work to reduce [gross monthly] income." *Haden*, 37 S.W.3d at 861 (citation omitted). "In order to avoid such a situation, income may be imputed to a parent based on what that parent could earn by the use of his or her best efforts." *Id.* "If a parent is unemployed or determined to be underemployed, 'gross income' may be based on imputed income." *Id.* (*quoting* **Civil Proc. Form No. 14, Directions, Line 1: Gross Income**).

As to imputing income in calculating the Form 14 PCSA, **Comment H** provides:

When determining whether to include imputed income and, if so, the amount to include in a parent's "gross income," a court or administrative agency shall consider all relevant factors, including:

(1) the parent's probable earnings based on the parent's work history during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods;

(2) the parent's occupational qualifications;

(3) the parent's employment potential;

(4) the available job opportunities in the community; and

---

4. When *Mund* was decided, the provision in question was found in § 452.375.12. By amendment in 1998, it was renumbered as § 452.375.13.

(5) whether the parent is custodian of a child whose condition or circumstances make it appropriate that the parent not be required to seek employment outside the home.

Civil Proc. Form No. 14, Comments for Use, Line 1: Gross Income. Although the Line 1, Form 14 Directions and Comments permit the imputation of gross monthly income to an unemployed or underemployed parent in calculating the PCSA:

> [p]roof that a parent has previously made more money ... is not alone a sufficient basis upon which to impute income at those levels, as the amount imputed must be based on the types of evidence discussed in the Form 14 instructions.

*Haden,* 37 S.W.3d at 861 (citation omitted).

 The appellant testified that at the time of trial she was not employed full time, but was babysitting part time for her sister, earning $140 per week, which would be $607 per month. The trial court, however, in its Form 14 calculation, imputed to her gross monthly income of $1,040, based on an hourly wage of $6 per hour for 40 hours per week. In its findings with respect to child support, the trial court never found that the appellant was underemployed, necessitating an imputation of income.[5] However, as to maintenance, the trial court did find that the appellant "has chosen not to be full-time employed. She has chosen to be underemployed when she is qualified for much better employment...." [6] In support of this finding, the

court found that: "[the appellant] is able to support herself through appropriate employment as she has attended college to become a registered nurse, successfully completed the coursework but has not passed the State Board exam"; "while [the appellant] has had sporadic employment during the marriage, she has made $8.00 per hour in one job, $5.25 per hour in one job, and $11.00 per hour in one job, as recently as 1996"; "from [the appellant's] own testimony ... she 'chooses not to work 40 hours per week' and is staying home babysitting two other children and her daughter, and she 'doesn't intend to seek employment'"; and "she had applied for one job since separation." The appellant claims that, applying the factors set forth in Comment H, Line 1, Form 14 for determining the imputation of income, the evidence was insufficient to support the trial court's imputing income to her of $1,040 per month.

As to her recent work history, the record reflects that for most of the marriage, the appellant either attended college or, by agreement of the respondent, was a stay-at-home mother. After the birth of the parties' child, the appellant had two short-lived, part-time jobs. The first was as a nursing assistant at a rate of $8 per hour, working, at most, 20 hours per week. The second was as a home health assistant at a rate of $11 per hour, working nine hours per week. While the appellant testified that she had never earned the amount of money imputed to her during the parties'

---

**5.** A parent is "underemployed" for purposes of Form 14 when he or she has voluntarily reduced his or her employment in an attempt to avoid child support. *Ricklefs v. Ricklefs,* 39 S.W.3d 865, 874 (Mo.App.2001) (citation omitted).

**6.** While findings as to maintenance are not binding as to findings for child support, where the court makes a finding that impacts both awards, we can presume that the court

considered that finding in regard to each award. *See Monnig v. Monnig,* 53 S.W.3d 241, 247–49 (Mo.App.2001) (holding that where court made finding as to imputation of income for purposes of child support award but no separate finding for imputation for purposes of awarding maintenance, it can be presumed that the court considered the finding for that purpose also).

eight-year marriage, the respondent testified that she had for a period of two months. While the parties were separated, the appellant worked part time for six months in a shoe store earning $5.25 per hour, plus a three percent commission. However, when she received temporary custody of the parties' minor child during the pendency of the dissolution proceeding, she quit that job to be with the child while school was out for summer vacation. When asked at trial about her plans to seek full-time employment, the appellant responded that she had none because she anticipated she would be awarded custody of the minor child and wanted to stay at home to be with her. There is nothing in the record concerning the appellant's intention to seek full-time employment if she did not receive custody of the child.

As to the appellant's occupational qualifications, job potential and availability of job opportunities in the community, the record would reflect that she had the ability to work full time in some capacity. The question was in what capacity and at what rate of pay. As the trial court found, she had attended college and obtained her nursing degree. However, she had twice failed, for whatever reason, to pass the state nursing boards, which as the appellant testified precluded her from fully utilizing her nursing degree. Further, she testified that she had attempted, prior to the parties' separation, to obtain other jobs in the health care industry, applying for a job as a nurse's aide at over thirty hospitals and doctor's offices, but had been rejected for employment. Their reasoning, according to the appellant, was that they did not want to train her as a nurse's aide and then have to retrain her as a nurse once she passed the nursing board examination. Although the court did not have to believe the appellant's testimony, *see Lewis v. Lewis*, 978 S.W.2d 64, 66 (Mo.App. 1998) (citation omitted) (holding that the trial court is free to disbelieve the uncontradicted testimony), it had to have some evidence before it that full-time employment was available to her, paying at least $6 per hour. *See Hosack v. Hosack*, 973 S.W.2d 863, 871–72 (Mo.App.1998) (holding that the court is not allowed to set an amount of imputed income based on speculation). The record reflects that the respondent did not offer any evidence to establish that there were jobs available to the appellant for which she was qualified and could earn at least $6 per hour full time.

While the record would support the fact that the appellant is physically and mentally capable of working full time in some capacity, it is insufficient to impute income of $6 per hour such that the trial court abused its discretion in awarding child support based on an imputation of income based on that hourly wage. *See Walker v. Walker*, 936 S.W.2d 244, 248 (Mo.App. 1996) (holding that court's imputation of $2,315 per month in income was abuse of discretion where there was no evidence in the record of available jobs at that salary for which the husband was qualified). At best the record would support an imputation of income based upon minimum wage, which is presently $5.15 per hour, 29 U.S.C.A. § 206(a)(1) (1998), for 40 hours per week. *See Hill v. Hill*, No. ED 76954, 2000 WL 1486290, at *4 (Mo.App.2000), *trans'fd to* Mo. S.Ct. on Jan. 23, 2001 (holding that an imputation of minimum wage is appropriate where the record supports the fact that a spouse is physically and mentally capable of working full time, but does not support a finding as to his or her qualifications as to any specific type of employment). Accordingly, we reverse and remand as to the trial court's award of child support for it to recalculate its award, imputing gross monthly income to the appellant based on minimum wage.

## VI.

In Point VI, the appellant claims that "[t]he trial court erred in that portion of the judgment of dissolution denying appellant's claim for maintenance because R.S.Mo. 452.335 allows a trial court to award maintenance after consideration of certain factors stated therein, in that the trial court failed to consider that appellant lacked sufficient property, including marital property apportioned to her, to provide for her reasonable needs and was unable to support herself through appropriate employment." The appellant's point relied on fails to substantially comply with Rule 84.04(d)(1).

As discussed in Point I, *supra*, for a proper point relied on, Rule 84.04(d)(1) requires that each point:

(1) identify the trial court's ruling or action that the appellant is challenging on appeal; (2) state the legal reasons for the appellant's claim of reversible error; and (3) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

*Franklin,* 32 S.W.3d at 803 (citation omitted). While the appellant does identify the ruling being challenged, her stated legal reason, "because R.S.Mo. 452.335 allows a trial court to award maintenance after consideration of certain factors stated therein," leaves us confused, given our understanding of the law for awarding maintenance.

▬ The determination of maintenance, as governed by § 452.335.1, is a two-step procedure. *Crews v. Crews,* 949 S.W.2d 659, 666 (Mo.App.1997) (citations omitted). In the first step, § 452.335.1 requires the trial court to find that: (1) the party seeking maintenance lacks sufficient property to provide for his or her reasonable needs; and (2) the party seeking maintenance is unable to support himself

or herself through appropriate employment. Once these findings are made, in the second step, § 452.335.2 requires that the trial court, in determining the amount and duration of its maintenance award, consider the ten factors enumerated in the statute. In reading the appellant's point relied on, specifically the "because" phrase, which, pursuant to Rule 84.04(d)(1), presumably sets out the appellant's legal reason for her claim of error, it would appear that she is claiming that the trial court failed to consider the "factors" found in § 452.335.2. However, that argument makes no sense in that the ten factors enumerated only go to the amount and duration of maintenance, which issues the trial court never reached here in that it denied the appellant maintenance. Thus, we are left to assume that the appellant's legal reason actually appears in the "in that" phrase of her point relied on, which, pursuant to Rule 84.04(d)(1), presumably sets out the appellant's factual basis for her claim of error. Even engaging in that assumption, the appellant's point relied on is still substantially deficient in that it is nothing more than an abstract statement of the law, that "the trial court failed to consider that appellant lacked sufficient property, including marital property apportioned to her, to provide for her reasonable needs and was unable to support herself through appropriate employment," which is not sufficient to comply with Rule 84.04(d)(1). Rule 84.04(d)(4); *Perkel,* 19 S.W.3d at 146–47. In addition, we would note that the appellant's point relied on is further deficient in that the argument of her point fails to provide us with the requisite page references to the legal file or transcript that support her argument. Rule 84.04(i).

Given the significant deficiencies of the appellant's point relied on in this point and declining to be her advocate, which we

must, by scouring the record and argument to determine the factual basis for her claim of error, we find that her point relied on preserves nothing for our review. *Saidawi,* 987 S.W.2d at 504.

### VII.

In Point VII, the appellant claims that "the trial court erred in that portion of the judgment of dissolution denying appellant's claim for attorney fees because R.S.Mo. *452.335* allows a trial court to award attorney fees after consideration of certain factors stated therein, in that the trial court failed to consider the disparity in the parties' income and the disproportionate division of property." (Emphasis added.) While the appellant's point relied on is not a model of compliance with Rule 84.04(d), because we are able to ascertain, without being required to unduly scour the argument and record, the factual basis claimed for why the legal reason asserted applies in this case, we will review it.

Although the appellant cites " § 452.335" as the statutory authority for awarding attorney's fees in a dissolution proceeding, the actual section is § 452.355. Section 452.355.1 provides, in pertinent part:

> Unless otherwise indicated, the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment.

This section "permits but does not require a trial court to award attorney fees." *In re Marriage of Baker,* 986 S.W.2d 950, 958 (Mo.App.1999) (citation omitted).

[redacted] " 'The trial court is, of course, an expert on the issue of attorney's fees and may independently determine and award such fees as it deems appropriate.' "*Bauer v. Bauer,* 38 S.W.3d 449, 457 (Mo.App.2001) (*quoting Taylor v. Taylor,* 25 S.W.3d 634, 649 (Mo.App.2000)). The trial court's decision as to a request for award of attorney's fees is presumptively correct. *Hennessey v. Smith-Hennessey,* 997 S.W.2d 538, 544 (Mo.App.1999) (citation omitted). This court will not reverse a trial court's decision as to an award or denial of attorney's fees pursuant to § 452.355, unless we find that the court abused its discretion. *Bauer,* 38 S.W.3d at 457 (citation omitted). In order to show an abuse of discretion, "the complaining party must show that the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.*

[redacted] The appellant claims that the trial court, in not awarding her any attorney's fees, failed to consider the "disparity in the parties' incomes and the disproportionate division of the property," as required by § 452.355.1. Where, as here, the trial court was not required to make and did not make any findings concerning its denial of a party's request for attorney's fees, it is presumed to have considered all of the relevant factors. *See Bauer,* 38 S.W.3d at 458 (holding that just because court does not make a finding as to each factor does not mean that the court did not consider that factor). The appellant points to nothing in the record that would rebut this presumption. In any event, the record reflects that as to the appellant's claim with regard to the disproportionate division of marital property, as discussed,

*supra,* in Point III, the appellant received approximately 48 percent of the marital property. This is not a significantly disproportionate division of property that would require, *per se,* an award of attorney's fees. Likewise, the fact that the respondent's monthly income is currently significantly greater than the appellant's is not enough, by itself, to compel an award of attorney's fees. *Taylor v. Taylor,* 12 S.W.3d 340, 348 (Mo.App.2000). Accordingly, we cannot say that the trial court's denial of the appellant's request for attorney's fees was so unreasonable and arbitrary as to shock our sense of justice requiring us to reverse for an abuse of discretion.

Point denied.

### Conclusion

The appellant's claims of error in Points I and VI are dismissed. The circuit court's judgment dissolving the parties' marriage; dividing their marital and non-marital property and debts; and denying maintenance and attorney's fees to the appellant is affirmed. The court's judgment awarding child custody and support is reversed and remanded for further proceedings in accordance with this opinion.

SPINDEN, C.J., and ULRICH, J., concur.