Matt A. LUDWIG, Respondent,

v.

Kathleen J. LUDWIG, Appellant.

No. WD 62555.

Missouri Court of Appeals,
Western District.

Feb. 17, 2004.

John Allinder, Independence, for Appellant.

John W. Dennis, Jr., Independence, for Respondent.

RONALD R. HOLLIGER, Judge.

Kathleen Ludwig appeals a judgment of dissolution, asserting three claims of error relating to the custody determination and two points relating to the division of marital property and allocation of debts. She first contends that the Guardian ad Litem failed to conduct an adequate investigation. In her second and third points, she argues that the trial court erred in failing to find a pattern of domestic violence and in failing to make specific findings under Section 452.375.13, RSMo 2000,[1] that the custody arrangement best protected the parties and the children from domestic violence or abuse. Wife's remaining two points claim that the trial court erred by dividing the marital property and debts in an unfair and inappropriate manner.

We conclude that the trial court committed reversible error in failing to make the findings required by Section 452.375.13, RSMo. We also hold that the trial court abused its discretion in its division of marital property and debts. The judgment below is, therefore, reversed, and the matter remanded for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

Matt Ludwig ("Husband") and Kathleen Ludwig ("Wife") were married on April 28, 1990, and two sons were born during the marriage. Both parties admitted at trial that the marriage was stormy and that they often engaged in heated arguments. Several of those altercations resulted in intervention by the police. In 1992, before the birth of their first child, Husband was arrested following one of those incidents. While no charges were filed against Husband, he underwent anger management counseling. Husband also indicated that Wife hit him on a number of occasions, and Wife conceded that those altercations had

---

1. All further statutory references are to RSMo 2000, unless otherwise indicated.

been physical at times. There was also evidence that both parties had argued with others on a few instances.

Husband was. continuously employed throughout the marriage. Wife's last employer prior to the separation was Blue Cross / Blue Shield. She voluntarily left that employment in March 2000, though did not reveal to Husband that she had quit that position until two or three weeks later. Following the separation, Wife moved through a number of jobs. She also claimed to have been working for the U.S. Post Office, a claim that the trial court found to be not credible, based on her testimony.

The parties separated on July 14, 2000. Wife moved to California, taking the children with her. She did not advise Husband of her intended out-of-state relocation with the children until the day she moved. Husband filed the petition for dissolution of marriage a few weeks later.

Upon reaching California, Wife initially moved in with her mother and stepfather. Wife's grandmother, together with Wife's half-sister and her three children, were also living at that residence. At some point late 2000 or early 2001, Wife was involved in an altercation with her mother in which Wife struck her mother. Following this incident, Wife was thrown out of her mother's house. Wife then moved in with James and Martha Tijerina, two of Wife's friends.

Following Wife's move to California, she refused to tell Husband where she was living or to provide contact information. Husband was able to determine where Wife was living, at one point, through use of "Caller ID" services. Nevertheless, Wife refused to provide Husband with her address in California for over two years after she moved with the children. Wife also failed to provide that information in response to interrogatories propounded to her.

Perhaps in an attempt to ensure that Husband would not find out where she and the children were living, Wife apparently also withheld address or phone information from the children, as well. This endangered the welfare of the children. During one incident, the children wandered away from the residence and became lost. Police picked up the children, but the children were unable to relate where they lived or to provide a phone number at which their mother could be contacted. They only knew the phone number for their Missouri residence. The police contacted Husband, who was also unable to provide the police any assistance in locating Wife or the children's residence. While that situation was later successfully resolved, the children were very frightened by that incident.[2]

Based, in part, on those events, Husband sought the appointment of a Guardian ad Litem for the children. The allegations in his motion also included physical, mental, and emotional abuse of the children by Wife and her violent conduct with others. It also alleged that Wife was preventing him from having contact with the children. Wife opposed the appointment of a GAL, claiming that no issues of abuse had been raised. Despite Wife's opposition, the trial court granted Husband's motion and appointed a Guardian ad Litem

---

**2.** This was not the only circumstance in which Wife showed a lack of concern for the children. Due to Wife's decision to relocate with the children on July 14, 2000, the elder son was unable to personally receive a sports award at a gathering held the following day. On another occasion, Wife failed to meet the children at the airport when they were returning from spending time with Husband and had to be summoned to the airport by airline personnel.

for the children. Eventually, through the involvement of the children's Guardian ad Litem, an arrangement was reached whereby Husband was to have phone contact on Wednesdays and Sundays, but, even then, Husband's opportunities for contact remained sporadic.

Due to Wife's changes of residence, the children changed schools a number of times. This affected the academic performance of the eldest child, who had been performing at an average to above-average level before leaving Missouri. At the time of trial, the elder son was earning below average to failing grades. While Wife testified that she was taking steps to help improve the children's academic performance, she had failed to have the children's records from their prior schools transferred to their school in California.

Husband underwent a clinical assessment for anger control issues and alcohol dependencies, at the request of the Guardian ad Litem. The evaluation report that followed indicated that Husband did not exhibit "an emotional or behavioral problem requiring treatment." In addition, his alcohol use did not rise to a level where it would meet criteria for admission to a treatment program.

An attorney originally represented wife but was granted leave to withdraw before trial. Wife did not secure replacement counsel and proceeded to trial *pro se.*

In the dissolution judgment, the trial court awarded Husband sole legal[3] and physical custody of the children. Wife was granted visitation with the children and was ordered to pay child support in the amount of $400 per month (a departure from the presumed child support amount of $557 per month). The trial court

awarded Husband approximately sixty-seven percent of the marital property, while awarding Wife the remaining thirty-three percent. Husband was allocated twenty-nine percent of the marital debt, and the bulk of the marital debt (seventy-one percent) was allocated to Wife.

Wife, now represented by new counsel, appeals.

### DISCUSSION

*Preliminary Issues:*

■ Husband has filed a motion asking us to dismiss Wife's appeal for a variety of alleged violations of Rule 84.04. Specifically, he raises four grounds for dismissal. First, he contends that Wife's statement of facts violates Rule 84.04(c), as it does not present a "fair and concise" presentation of the material facts. Second, he contends that the argument for a number of her points on appeal violates Rule 84.04(i) due to failure to include citations to the record. Third, he claims that three of Wife's points on appeal fail to comply with Rule 84.04(d). Fourth, he contends that Wife's brief should be struck and her appeal dismissed because it contains a number of factual claims that are completely outside the record.

■ We are generally reluctant to dismiss an appeal solely due to violations of Rule 84.04. *See Kidd v. Wilson,* 50 S.W.3d 858, 860 (Mo.App.2001). Where matters of child custody are at issue, we are even more cautious. *See, e.g., R.W.D. v. L.J.D.,* 567 S.W.2d 376, 376 (Mo.App. 1978); *Harbaugh v. Harbaugh,* 472 S.W.2d 449, 451 (Mo.App.1971). Ultimately, our determination hinges on whether the viola-

---

**3.** Both Husband and the Guardian ad Litem recommended awarding joint legal custody to both parents. The trial court, however, apparently determined that joint custody was inappropriate, given the parties' history of conflict and poor communication with regard to the children's welfare.

tions of Rule 84.04 impedes disposition of the merits by failing to make the issues on appeal clear to the parties and the appellate court. *See Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. banc 1997).

While Wife's brief is no model of draftsmanship or compliance with Rule 84.04, we conclude that the deficiencies did not result in confusion of the issues on appeal. We therefore decline to exercise our discretion to dismiss Wife's appeal for the violations of Rule 84.04 identified by Husband. Husband's motion to dismiss Wife's appeal is denied.

Wife has also filed a cross-motion, asking us to strike Husband's brief for violations of "Rules 84.06(6) and 84.06(7)[sic]." The rules cited by Wife do not exist. However, it would appear that Wife intended to cite Rules 84.06(a)(6) and (a)(7), which concern the font and double-spacing requirement of briefs, respectively. Given our intent to address the merits of Wife's appeal despite the deficiencies of her brief, we refuse to strike Husband's brief, as well. Wife's cross-motion to strike Husband's brief is denied.

## I. Adequacy of the Guardian ad Litem's Investigation

■ In her first point on appeal, Wife contends that the trial court erred in granting Husband sole legal and physical custody of the children for the reason that the Guardian ad Litem failed to adequately perform her obligations to represent the children's best interests. Specifically, Wife claims that the Guardian ad Litem failed to conduct an adequate investigation (including interviews) and failed to participate meaningfully at trial. Wife claims that, had the Guardian done so, the evidence would have shown that Wife was equally involved with the children, that Husband was abusive to Wife in front of the children, and that Husband abuses alcohol.

■ The adequacy of the Guardian ad Litem's investigation was not challenged in the proceedings below, and Wife raises the issue for the first time on appeal. Wife concedes that we may only review this point for plain error pursuant to Rule 84.13(c). *In re S.M.*, 938 S.W.2d 910, 923 (Mo.App.1997). Plain error review is discretionary. *Young v. Young*, 59 S.W.3d 23, 27 (Mo.App.2001). We will generally grant relief upon plain error review only upon a showing that a manifest injustice or a miscarriage of justice has occurred. *See In re S.M.*, 938 S.W.2d at 923.

While the matter was pending, the Guardian ad Litem did undertake an investigation. The Guardian ad Litem participated in a number of in-person and telephone conferences with the parties, Husband's parents, and at least one other individual. The Guardian also arranged a home visit with the children while they were in Husband's care in Missouri. As discussed above, Husband also underwent a clinical assessment at the Guardian's request.

The record is unclear as to what investigation the Guardian ad Litem conducted with regard to Wife's fitness with regard to custody of the children. We recognize that the Guardian was faced with the task of conducting an investigation that spanned half the continent. Compounding that difficulty are suggestions in the record that Wife was not cooperative in providing information to the Guardian ad Litem. For example, Wife did not provide the Guardian with the children's school records, forcing the Guardian to obtain them independently. Wife also either misled the Guardian as to the Tijerina's

name [4] or knowingly permitted a mistaken understanding regarding their name to continue.

In the proceedings below, the Guardian ad Litem extensively cross-examined both parties and made a number of evidentiary objections during trial. While Wife is correct that the Guardian did not call any witnesses of her own or cross-examine any other witnesses, we disagree with her implication that the Guardian was merely a passive observer. Wife contends that the Guardian should have interviewed one of the children's teachers, detailing a number of allegations that lie completely outside the record on appeal. Aside from that witness, Wife does not suggest any additional witnesses or that the Guardian Ad Litem was (or should have been) aware of any such witnesses or what testimony they might have offered. The Guardian ad Litem also presented her recommendations to the trial court at the conclusion of the case and offered her own proposed parenting plan.

Wife principally relies upon two cases. In the first, *Baumgart v. Baumgart*, 944 S.W.2d 572 (Mo.App.1997), the guardian's performance was minimal at best. The guardian's only involvement during trial was asking a few questions of a psychologist. *Id.* at 579. The guardian did not cross-examine any other witness (not even the mother, who testified) or call witnesses to present testimony. Nor did the guardian in *Baumgart* offer a recommendation to the trial court. There was also some question as to whether the guardian had even informed himself of the children's status or current custody arrangements. The guardian had done essentially nothing

substantial toward discharging his responsibilities as the advocate for the children's best interests. While the judgment in *Baumgart* was reversed on other grounds, the trial court was ordered, on remand, to appoint a different guardian to represent the children. *Id.* at 580.

Wife also relies on *McCreary v. McCreary*, 954 S.W.2d 433 (Mo.App.1997), which concerned a modification judgment in which physical custody was changed to the father. Shortly after the entry of judgment, the mother filed a motion to amend the judgment and to reopen the evidence, in order to address allegations that the father had abused the children. The trial court appointed a guardian ad litem at that juncture but ultimately declined to reopen the case. *Id.* at 438. While this court suggested that the guardian's performance appeared to be potentially deficient, it was not a basis for the resulting reversal of the judgment. Indeed, this court also opined that the guardian might not have been able to do more under the circumstances. *Id.* at 449.

Unlike *Baumgart*, the Guardian ad Litem, here, was involved in the case and made an effort to investigate the issues relevant to the children's best interests. While some might argue that the Guardian could have been more thorough in her investigation, we cannot say, based upon the record before us, that the Guardian would have been able to do more in carrying out her duty to represent the children's best interests.

Certainly, based on the record before the court,[5] we cannot reach a conclusion

---

4. During much of the proceedings, both the Guardian and Husband believed that Wife was living with "John and Martha Handyman," apparently based upon the household answering machine message.

5. Wife includes in her argument claims regarding "evidence" that could have been obtained from one of the children's teachers. Those matters fall completely outside the record on appeal, however, and cannot be considered by this court. *See 8182 Maryland*

that the Guardian ad Litem's actions (or inaction) resulted in a manifest injustice or a miscarriage of justice. We therefore decline to exercise our discretion to engage in plain error review. Point denied.

II. *Failure to Find a Pattern of Domestic Violence Under Section 452.375.2(6)*

With regard to Wife's remaining points on appeal, our review is guided by the standard of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *King v. King*, 66 S.W.3d 28, 32 (Mo.App.2001). We will reverse the trial court only if we conclude that the judgment was against the weight of the evidence, was not supported by substantial evidence, or misstated or misapplied the law. *Id.* We will reverse a judgment as against the weight of the evidence "only with caution and a firm belief that the judgment is wrong." *Id.* We view the evidence in the light most favorable to the judgment and give substantial deference to the trial court's judgment, even if the evidence could support a different conclusion. *Taylor v. Taylor*, 25 S.W.3d 634, 638 (Mo.App.2000).

In her second point on appeal, Wife argues that the trial court erred in failing to find that a pattern of domestic abuse existed between the parties. She takes the position that such a finding was required here, based upon the parties' history of altercations, including one incident that resulted in Husband's arrest. Husband, while conceding that there was a history of verbal arguments between the parties, the few instances in which those arguments turned into physical confrontations did not constitute a pattern of domestic violence or abuse.

In determining the best interests of the children for the purposes of allocating child custody, the trial court is required to consider all relevant factors. Among the factors articulated in Section 452.375.2(6), RSMo 2000, is the "mental and physical health of all individuals involved, including any history of abuse of any individuals involved." Should the court conclude that "a pattern of domestic violence has occurred," then the statute requires the trial court to make written findings of fact and conclusions of law. § 452.375.2(6), RSMo. The statute further provides that "[c]ustody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm[.]" *Id.*

A trial court need not conclude that a pattern of domestic violence exists when the evidence reveals only a few incidents of such violence. In *Loumiet v. Loumiet*, 103 S.W.3d 332, 341 (Mo.App. 2003), the trial court found that the husband had committed three acts of domestic violence against his wife, but found that there was no pattern of domestic violence. While the propriety of the trial court's finding was disputed on appeal, this court declined to disturb the trial court's ruling on that issue. *See id.*

Wife relies on *Williams v. Williams*, 55 S.W.3d 405 (Mo.App.2001), as providing an example of a finding of a pattern of domestic violence under similar conduct. Review of *Williams*, however, shows that the instances of physical violence were far more numerous, in which the husband was regularly injured by the wife's abusive conduct. *See id.* at 413. Police intervened in those incidents at least four times during the parties' marriage. *See id.* The trial court found that a pattern of domestic violence was present during the marriage. No issue was raised in regard to whether the

*Assocs., Ltd. P'ship v. Sheehan*, 14 S.W.3d 576, 587 (Mo. banc 2000).

evidence was sufficient to support that finding. Indeed, the issue on appeal in *Williams* was not whether the evidence supported a finding of a pattern of domestic violence under Section 452.375.2(6), RSMo. Instead, the issue on appeal was the trial court's failure to make other required findings pursuant Section 452.375.13, RSMo, that the custody and visitation arrangement best protected the children and the husband from future domestic violence or abuse. *Id.*

The other case Wife relies upon, *Belcher v. Belcher*, 106 S.W.3d 601 (Mo.App.2003), does not expressly take up the issue of whether the incidents of domestic violence described in the evidence were sufficient to constitute "a pattern of domestic violence." [6] Instead, the opinion seems to merely presume that the statute was triggered and reverses for the failure to make the required statutory findings under both subsections of Section 452.375, RSMo.

Viewing the evidence in the light most favorable to the judgment, the case at bar seems closest to the situation faced by the court in *Loumiet.* While we have a history of heated arguments regularly occurring between the parties, the evidence indicated that physically violent confrontations between the parties were a comparatively rare event, occurring primarily prior to the birth of the children. This is in contrast to *Belcher*, where such events were frequent occurrences. Under the facts presented, the trial court could reasonably conclude, as it found, that the

evidence did not support a finding that there had been a pattern of domestic violence. The court's finding that there was no pattern of domestic violence was supported by the evidence and was not against the weight of the evidence. Wife's second point on appeal is, therefore, denied.

### III. *Failure to Make Findings Under Section 452.375.13*

■ Wife's third point claims that the trial court erred by failing to make specific findings pursuant to Section 452.375.13, RSMo. When that statute is applicable, it requires findings that the custody arrangement ordered by the court best protects the children and the parent who was the victim of abuse from further harm due to domestic violence or abuse.

■ This statutory requirement is triggered when there has been domestic violence or abuse during the marriage. Unlike Section 452.375.2(6), RSMo, it is irrelevant whether the domestic violence or abuse was an isolated incident or part of a pattern of domestic violence or abuse. *Cooley v. Cooley*, 99 S.W.3d 518, 520 (Mo. App.2003). It is also irrelevant which parent is awarded custody. *Mund v. Mund*, 7 S.W.3d 401, 404 (Mo. banc 1999). Once the trial court determines that domestic violence or abuse has occurred, the court is required to make the additional findings outlined in Section 452.375.13, RSMo. A trial court commits reversible error by failing to make those mandatory findings.[7]

---

**6.** The *Belcher* opinion glosses over the distinctions between Sections 452.375.2(6) and 452.375.13, RSMo. *See* 106 S.W.3d at 603. The first statute is triggered upon the existence of a *pattern* of domestic violence and requires findings *if custody is awarded to the abusive parent.* *See Dickerson v. Dickerson,* 55 S.W.3d 867, 872 (Mo.App.2001). The latter statute is triggered if *any* domestic violence has occurred and does not depend on which

party is granted custody. *See id.* A close reading of *Belcher* suggests that the issue that led to reversal was the failure to make findings pursuant to the latter statute, not the lack of findings under Section 452.375.2(6), RSMo.

**7.** Error has been found due to the failure to make findings under Section 452.375.13, RSMo, even when there had been no express

*See Dickerson v. Dickerson*, 55 S.W.3d 867, 874 (Mo.App.2001).

Even though there was no pattern of domestic violence between the parties, both parties admit that there were incidents between them in which domestic violence occurred. The trial court made express findings regarding those incidents. While Husband concedes that the trial court failed to make findings under Section 452.375.13, RSMo, he nevertheless contends that we need not reverse the judgment below, raising three arguments in support of his position.

■ Husband first contends that Wife has not properly preserved this issue through her point on appeal. While we agree that the point on appeal is not the most artfully drafted, we disagree with his contention that it does not pass muster under Rule 84.04. In our view, Wife's stated point on appeal clearly raises the issue of whether the trial court failed to make the findings mandated by Section 452.375.13, RSMo.

Husband's second argument is that, despite the lack of express findings, we should imply those findings based upon the presumption that the trial court's judgment was made in view of the children's best interests. It is clear that the trial court was concerned about the isolated incidents of domestic violence and gave them consideration, although failing to make any findings about whether or how the custody or visitation order should address the issue. Accepting Husband's argument, however, would render Section 452.375.13, RSMo, essentially meaningless.

Husband's third argument is that, even if the failure to make findings was error, we should not reverse the judgment below because Wife has failed to show how either she or the children were prejudiced by the failure to make those findings. Precedent does not support husband's argument. In *Williams v. Williams*, 55 S.W.3d 405 (Mo. App.2001), there was no indication that the appellant was prejudiced by the lack of findings under Section 452.375.13, RSMo. Nevertheless, the failure to make those findings was held to constitute reversible error. *Id.* at 414.

■ The trial court's obligation under Section 452.375.13, RSMo, is analogous to its obligation to make findings in response to a timely request for findings under Rule 73.01(c). In that context, the failure to make the findings requested generally constitutes reversible error, provided the failure affects the merits of the action or interferes with appellate review. *See Lattier v. Lattier*, 857 S.W.2d 548, 549 (Mo. App.1993). If the record is sufficient to support the judgment, however, the judgment may be upheld on appeal, despite the failure to make the requested findings. *See Clark v. Clark*, 20 S.W.3d 562, 566 (Mo. App.2000).

Here, the lack of findings runs directly to the merits of the action. By creating the statutory requirement, the legislature's manifest intent was to ensure that, in cases where there was a history of domestic violence or abuse, the trial court carefully considered those circumstances in awarding child custody and providing for visitation. Requiring such findings also provides a means for more careful and thorough appellate review. Although we, frankly, perceive no obvious modifications of the parenting plan needed to accommodate domestic violence concerns, the statutory mandate for findings does not permit

finding of domestic violence or abuse in the trial court's judgment, when the weight of the evidence clearly supported an implicit finding

that domestic violence or abuse had occurred. *See, e.g., Cooley v. Cooley*, 99 S.W.3d at 519–20.

such an exception. Thus, we grant Wife's third point on appeal, remanding to the trial court for the entry of appropriate findings pursuant to Section 452.375.13, RSMo.

## IV. *Division of Marital Property and Debts*

 Wife's fourth point on appeal contends that the trial court erred in its division of marital property, while her fifth point raises a parallel claim of error with regard to the division of marital debts. Wife argues that the trial court's property and debt division was so substantially in favor of Husband that it constituted an abuse of discretion.

 When reviewing a trial court's division of marital property and debts, we will reverse the judgment "only if the division is so unduly weighted in favor of one party as to constitute an abuse of discretion." *King v. King,* 66 S.W.3d 28, 33 (Mo.App.2001). To find an abuse of discretion, we must conclude that the arbitrary and unreasonable nature of the award suggests indifference and a lack of appropriate judicial consideration. *See id.* Here, the trial court awarded Husband marital property in the amount of $21,245.10, while awarding Wife property amounting to $10,367.92. Husband was, therefore, awarded sixty-seven percent of the marital property. With regard to the division of marital debt, $4,412.44 was allocated to Husband and $17,491.76 was allocated to Wife.

 Pursuant to 452.330, RSMo, a court must consider "all relevant factors" in dividing marital property and debts in a dissolution proceeding. Among the factors to be considered by the court are:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

§ 452.330.1, RSMo. The court is not limited to those factors, however, and may also consider any other relevant criteria. *See Rawlings v. Rawlings,* 36 S.W.3d 795, 798 (Mo.App.2001). No formula is given for how those factors are to be weighed, nor must the resulting division of property and debts be equal. *See id.* Ultimately, however, the division must be fair and equitable to the parties. *See id.*

A number of those statutory factors weigh in Husband's favor. For example, the fifth factor falls in favor of Husband, given that he was awarded custody of the children. The third factor also tends to favor him, as Husband received $2,500 less than wife in nonmarital property.

 Husband claims that the fourth factor (misconduct) also comes into play here and favors him in the property division. Generally, a party's misconduct during the marriage may be considered within the context of the property division when it has placed additional burdens on the other party. *See McNair v. McNair,* 987 S.W.2d 4, 6–7 (Mo.App.1998). Those burdens need not necessarily be financial. *Ballard v. Ballard,* 77 S.W.3d 112, 117 (Mo.App.2002). Nevertheless, the court cannot use the property division solely to punish the spouse who has committed mis-

conduct. *See Nelson v. Nelson*, 25 S.W.3d 511, 519 (Mo.App.2000). Misconduct that may be considered in the division of property is misconduct that places an additional and unreasonable burden on the marital relationship. *See id.; McNair*, 987 S.W.2d at 6–7. Here both parties were guilty of misconduct toward the other.

Husband argues, however, that the Wife clearly committed misconduct by attempting to restrict Husband's access to and contact with the children following her move to California. Those actions also placed additional burdens on Husband. For example, Husband paid for at least two round trip tickets for the children so that they could spend time with him while the case was pending. He also purchased prepaid phone cards in an attempt to facilitate phone contact with the children. We disagree that this is the type of misconduct envisaged in Section 452.330. Although not appropriate, her actions were not shown to place any burden on the marital unit itself, whether economic or emotional. The trial court, therefore, erred to the extent it relied upon such misconduct to justify a highly disproportionate division of property.

Removing the element of misconduct from the analysis, none of the statutory or non-statutory factors justify the extent of the court's unequal division. With regard to the marital debts, it appears that the court essentially allocated to each party the credit cards held in that party's name.[8] The evidence established that each party held their own separate credit cards and bank accounts for at least ten years prior to trial. The parties also divided the mari-

tal expenses. Husband paid rent, utilities, insurance, taxes, and the children's daycare expenses. Wife paid for groceries and daycare. The parties divided other miscellaneous expenses, such as purchasing clothing for the children. Even in those circumstances, however, a written agreement between the parties to treat each other's credit card debt as separate, nonmarital debt is required to defeat the presumption that the debts are marital property. *See Rawlings*, 36 S.W.3d at 798 (Mo.App.2001).

Husband argues that he should not be saddled with Wife's credit card debt because he was financially responsible and kept his debt levels paid down. He points us to no evidence in the record, however, in support of that claim. Nor is there any other substantial evidence in the record with regard to how those debts were incurred that would enable Husband to overcome the presumption that they are marital debts or that Wife improperly incurred those debts. We, therefore, presume the debts to be marital and subject to division pursuant to Section 452.330.1, RSMo. *See Bond v. Bond*, 77 S.W.3d 7, 12 (Mo.App. 2002).

There are no non-statutory factors here that bear upon the division of marital property and debts. While a number of the statutory factors favor Husband, in our view, the trial court's allocation to Wife of seventy-one percent of the marital debts while awarding her only thirty-three percent of the marital property overwhelmingly favored Husband. The division of marital property and debt was so arbitrary

---

**8.** We note, in passing, that Gerald Ludwig, Husband's father, testified that he had loaned Wife $10,000 at one point and that $9,000 of that loan remained unpaid. There was no document or exhibit admitted into evidence reflecting that alleged loan. It is not clear from the record whether the trial court found Gerald Ludwig's testimony to be not credible. Nor does the record reveal whether the trial court considered that debt to be marital or nonmarital. We trust that the trial court, on remand, will address this alleged debt in its judgment.

and unreasonable to suggest a lack of proper judicial consideration. We conclude that it was an abuse of discretion requiring reversal.

Wife's fourth and fifth points on appeal are sustained, and we reverse the judgment below with regard to the division of marital property and debt.

### CONCLUSION

Having concluded that the trial court erred in failing to make the findings required by Section 452.375.13, RSMo, and that the division of marital property and debts constituted an abuse of discretion, the judgment below is hereby reversed and remanded for further proceedings consistent with this opinion.

EDWIN H. SMITH, Presiding Judge, and LISA WHITE HARDWICK, Judge, concur.